[CB1] 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.  2-05-456-CR

 

 

ALFREDO LEYVA PECINA                                                                 APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                                       ------------

 

                                         OPINION ON REMAND

 

                                                       ------------

Appellant
Alfredo Leyva Pecina was
found guilty by a jury of murder and sentenced to life in prison.  Upon reconsideration on remand from the Texas
Court of Criminal Appeals, we reverse and remand.

                                         I.  Procedural Background








Following
his jury trial, Pecina appealed his conviction to
this court and raised four issues, including complaints that the trial court
erred by denying his motion to suppress statements he made to police in
violation of his right to counsel under the Fifth and Sixth (and Fourteenth)
Amendments.  This court affirmed the
trial court=s judgment, and as relevant here,
held that PecinaCafter
being warned of his Miranda rights[1]
by a magistrate the police brought with them to question him in the hospitalCeither
did not clearly invoke his right to counsel under the Fifth Amendment, or,
alternatively, waived his right to counsel by reinitiating contact with the
police.[2]  We further held that, although Pecina=s Sixth
Amendment right to counsel attached when he was warned by the magistrate and
requested counsel, Pecina reinitiated contact with
the police and waived his right to have counsel present during the
interrogation.[3]  

The court
of criminal appeals reversed this court, holding that Pecina
had invoked his right to counsel and that the police reinitiated contact with Pecina; therefore, under the rule in Michigan v. Jackson,[4]
Pecina=s waiver
of his Sixth Amendment right to counsel was invalid, and his statements given
to the detectives should have been suppressed.[5]









Although Pecina contended in his petition for discretionary review
to the court of criminal appeals that any waiver of his right to counsel was
also invalid under the Fifth Amendment, the court of criminal appeals did not
reach or address Pecina=s Fifth
Amendment argument.  The court remanded
the cause to this court to conduct a harm analysis as to the violation of his
Sixth Amendment right.[6]


                                     II.  Scope of Review on
Remand

After
remand, the United States Supreme Court, in Montejo
v. Louisiana,[7]
overruled its decision in Jackson. 
Subsequently, the court of criminal appeals handed down an opinion in a
case similar to this one, holding that A[a]fter Montejo, the Sixth
Amendment does not bar police‑initiated
interrogation of an accused who has previously asserted his right to counsel.@[8]  Because of these intervening decisions, we
will reconsider Pecina=s
contentions that his statements should have been suppressed under both the
Fifth and Sixth Amendments.[9]

III.  Factual Background








Pecina and his wife, Michelle, lived with Michelle=s father
and her sister, Gabriela.  On the evening
of January 30, 2004, Gabriela came home from work and found both Pecina and Michelle lying on the floor of their bedroom,
bleeding from stab wounds.  When she
picked up the phone to call 911, Pecina stood up and
came toward her.  Gabriela ran from the
apartment to borrow a phone.  A neighbor
called 911 and went with Gabriela back to the apartment.  The neighbor saw blood all over the
apartment.  He told the 911 operator that
a female lying on the bedroom floor appeared dead; a male who was also lying on
the floor was still alive but appeared to be bleeding. 

When
paramedics and police arrived, they found an Aextremely
bloody@
scene.  Blood was on the walls and most
of the furniture.  Pools of blood were on
the floor.  A large amount of blood was
around both victims.  The female was cool
to the touch with no pulse and multiple injuries to her upper torso and
neck.  Having determined that they could
not resuscitate Michelle, the paramedics concentrated their attention on Pecina, who also had stab wounds, at least one of which
appeared serious.  Pecina
moaned but was not able to talk.  They
placed Pecina on an IV for fluids and established an
airway by intubating him.  Pecina was then
transported to Dallas Methodist Hospital.








Michelle
was pronounced dead at the scene; it was later determined that she had been
stabbed fifty-five times.  A serrated
kitchen knife, with a blade approximately seven inches in length, lay on the
floor by the bathroom sink counter.  Officer
Harris of the Arlington Police Department responded to the dispatch call and
arrived at the scene within two minutes. 
She saw the knife on the floor and Asecured@ it until
the crime scene investigators arrived.








Police
found no evidence of forced entry or tampering with doors or windows.  A crime scene investigator took blood samples
from around the room and found a palm print on the bathroom mirror as well as
latent prints near the front door handle. 
Another investigator went to the hospital the next day to document Pecina=s stab
wounds and to obtain fingerprints.  He
examined Pecina, who was still unconscious at that
time.  The investigator found no
defensive wounds and found a number of small wounds that, in his opinion,
appeared self-inflicted with many Ahesitation@ marks
around the larger wounds.         Because
the police believed Pecina had murdered his wife and
had attempted to kill himself, detectives prepared a warrant for his
arrest.  On the afternoon of February 5,
2004, Detective Nutt, the Arlington police officer in charge of the
investigation, took a Spanish‑speaking
magistrate, Arlington Municipal Judge Maddock, and
Detective Frias, who was also fluent in Spanish, with
him to the hospital.  According to the
detectives, the purpose of taking the magistrate with them was to have Pecina arraigned before they interviewed him.  Pecina was in a
room, being guarded by a Dallas County deputy sheriff.           The detectives entered Pecina=s
hospital room with the magistrate and introduced themselves to Pecina and the Dallas County deputy.  The magistrate went to the left side of Pecina=s
hospital bed with the deputy on the right side. She pointed to the officers and
said, AThey are here. They would like to speak to you.@  She testified that Pecina
Anodded
his head or said >yes.= I can=t
remember, but there was an acknowledgment.@  She advised Pecina
that he had been charged with murder. 
She then read Pecina his Miranda rights
in Spanish, including the right to hire a lawyer or to have a lawyer appointed
to represent him if he could not afford one, the right to have the lawyer
present prior to and during any interview and questioning by peace officers,
the right to remain silent, and the right to stop any interviewing or
questioning at any time.  Judge Maddock testified at the suppression hearing that following
her reading of those warnings, she asked Pecina if he
wanted a court-appointed lawyer, and he Asaid he
did.@[10] 

The magistrate
also explained to Pecina that, in the event he wanted
an attorney appointed for him, he would be asked to complete a written form
about his financial resources and provided with forms and assistance, if
necessary, to complete the forms.  She
had Pecina sign the warnings form.  The magistrate wrote on the bottom of the
waiver of counsel form that she was requesting appointment of counsel on her
own motion without requiring the forms. 
Without waiting for appointment of counsel, the magistrate then asked Pecina, ADo you
still want to talk to the officers?@ and he said, AYes.@








The
detectives waited in the hall while Judge Maddock
administered the warnings; they re-entered the room when she advised them to
come back in. As she handed the documents to the detectives, Judge Maddock advised them that Pecina
had requested a lawyer, but told them that Pecina
said he also wanted to talk to them. 
Detective Nutt recalled that Judge Maddock
said Pecina had initially requested a lawyer but then
told her that he wanted to talk to the detectives.   

Detective
Frias then read Pecina the Miranda
warnings in Spanish a second and third timeConce
before they started recording the interview and again after turning on the
recording device.  At some point in the
interview, Pecina signed a printed waiver of counsel
form.  At the conclusion of their
interview, Detective Frias wrote out a statement in
Spanish that Pecina signed, which included a waiver
of the right to counsel.  Detective Frias wrote in Spanish in the margin of the waiver of
counsel form, AI asked for a lawyer, but I also
wanted to speak with the Arlington police.@  The officers then transported Judge Maddock back to her office. 








In his
taped confession to the police, Pecina said that he
did not remember much that happened that day, that he had not used drugs or
alcohol,  that he and his wife had argued
about her not wanting to be with him, he became angry, and they began to fight.  When asked if he had cut Michelle, he said, A[Y]es.@ 
Pecina said that no one else was present when
these events occurred and that he had no memory of cutting himself.  In Pecina=s written
statement, he stated that he picked up the knife from the kitchen and cut his
wife.  He did not remember how many times
he cut her.  

Upon
returning to her office, Judge Maddock faxed the
forms for Pecina=s request
for counsel to the office of attorney appointments in Arlington for processing,
as Awe do not
have at our disposal right there the court appointed attorneys to immediately
come up and speak to them.@  Counsel was not appointed to represent Pecina until the next morning, February 6, 2004.

                                  IV.  Motion to Suppress

Pecina filed a motion to suppress both his oral and
written statements, claiming that the statements were not voluntarily given and
were obtained in violation of his Fourth, Fifth, Sixth, and Fourteenth
Amendment rights.  At the suppression
hearing, in addition to the testimony related above, the State, on redirect
examination of the magistrate, sought to confirm that Pecina  indicated to her that he wanted to
talk to the officers.  She responded, AHe said
he stillCI said, I
asked themChim, >do you still want to talk to them?= And he
said, >Yes.= He never
said to me that he wanted to talk to them.@ 








The trial
court denied the motion to suppress and found that Pecina
was fully informed of his rights and Aindicated
that although he did want a lawyer, that he wished to
also talk with detectives from Arlington, meaning that he basically was waiving
his rights at that time.@ 
The trial court further found that Pecina also
signed various waivers of counsel and was not under the influence of drugs or
alcohol when he gave the statements that were recorded and put in writing.  Based on those findings, the trial court
concluded that the statements were taken Avoluntarily@ and were
admissible.  The jury found Pecina guilty of murder and sentenced him to life in
prison.  

 

                                                  V.  First Appeal

On Pecina=s
original appeal to this court, we addressed Pecina=s issues
regarding the right to counsel under both the Fifth and Sixth Amendments and
held that the trial court did not err by finding that Pecina
had voluntarily waived his rights.[11]  We reasoned that Pecina
had waived his Fifth Amendment right to counsel Aeither by
failing to invoke it . . . or because he reinitiated the contact by
answering >yes= when
asked@ by the
magistrate if he still wanted to speak with the detectives and by telling the
detectives that he wanted to speak to them because nothing in the record
clearly showed that Pecina had indicated to Judge Maddock or the detectives at the time of the interview that
he wanted to speak to an attorney about the questioning or to have one present
during the questioning.[12]








This
court also concluded that Pecina=s Sixth
Amendment right to counsel had attached when he was administered his Miranda
warnings by the magistrate and requested a court‑appointed
attorney.[13]  We further determined that Pecina invoked his Sixth Amendment right to counsel.  But we determined that he then waived his
Sixth Amendment right to counsel when he said, AI asked
for a lawyer, but also I wanted to speak with the Arlington police.@[14]  We held that Pecina
also waived his right to counsel when he was advised of his Miranda
rights multiple times by the detectives prior to the interview, initialed the
written warnings, and answered on the recording that he understood each right
as it was read to him.[15]  This court affirmed Pecina=s
conviction, deferring to the trial court=s
findings of fact and rejecting Pecina=s
arguments that his Fifth and Sixth Amendment rights were violated.[16]


The court
of criminal appeals reversed this court=s
decision, holding that Pecina invoked his right to
counsel when he was arraigned by the magistrate and that Pecina
did not initiate contact with the police by answering AYes@ to Judge
Maddock=s
subsequent question as to whether he still wanted to talk to police; rather,
the police, acting through Judge Maddock, initiated
the contact with Pecina.[17]  The court thus held that, in violation of the
Sixth Amendment and based on Jackson, the police, themselves,
effectively initiated police interrogation Aafter [Pecina=s]
assertion, at an arraignment or similar proceeding, of his right to counsel[,
and] any waiver of [Pecina=s] right
to counsel for that police‑initiated
interrogation [was] invalid.@[18]  The court of criminal appeals remanded the
case to this court, instructing us to conduct a harm analysis.[19]

VI.  Discussion

A.  Pecina=s Sixth
Amendment Issue on Remand

The first
question now facing this court is whether we are to conduct the harm analysis
as instructed by the court of criminal appeals or re-evaluate Pecina=s Sixth
Amendment claim under Montejo. We have
received supplemental briefing from the State and Pecina=s
counsel.  The State argues that we should
reconsider Pecina=s Sixth
Amendment claim on the merits and hold that, under Montejo,
his rights were not violated when he freely and voluntarily gave his statement
without counsel present, having been twice warned of his rights after invoking
his right to counsel.

Pecina counters that, unlike the defendant in Montejo, who stood silent at his arraignment,
Pecina affirmatively invoked his right to counsel
before the police took his statement.  Thus, Pecina argues
any waiver by him is invalid even after Montejo,
and this court should now proceed to conduct the harm analysis as instructed by
the court of criminal appeals, hold that there was harm, and remand this case
to the trial court for a new trial. 

1.  Jackson no longer applies.

The Sixth
Amendment to the United States Constitution provides that A[i]n all criminal prosecutions, the accused shall enjoy the
right . . . to have the Assistance of Counsel for his defence.@[20]  The Sixth Amendment right to counsel is
fundamental and essential to a fair trial and, therefore, applies to the States
by virtue of the Fourteenth Amendment.[21]  Once the adversarial process has been
initiated, the Sixth Amendment right to counsel thereafter guarantees an
accused the right to have counsel present at all Acritical@ stages
of the prosecution.[22]  

The
warnings that the magistrate read to Pecina before
his interrogation were those required to be administered by a magistrate by
article 15.17 of the Texas Code of Criminal Procedure.[23]  The arresting officer must take the person
arrested before a magistrate Awithout
unnecessary delay@ but not later than forty-eight
hours after his arrest to have those warnings given, probable cause for his
arrest determined, and bail set.[24]
If the person is indigent and requests appointment of counsel, the magistrate
must appoint counsel, if empowered to do so by law, or forward the forms for
appointment of counsel to the court within twenty-four hours of the request.[25]  

An
Article 15.17 warnings hearing, like a formal arraignment, has been held
sufficient to mark the initiation of adversarial proceedings against an accused
and to signal attachment of the Sixth Amendment right to counsel.[26]  Efforts to elicit information from the
accused after charges have been brought, including in-custody interrogations by
police, are Acritical stages@ of a
criminal proceeding.[27]  In Jackson, the Supreme Court held
that, if police initiate custodial interrogation after a defendant has asserted
his right to counsel at an arraignment or similar proceeding, any waiver of the
defendant=s Sixth Amendment right to
counsel for that police-initiated interrogation is invalid.[28]

The court
of criminal appeals=s holding that Pecina=s Sixth
Amendment right to counsel was violated and its instruction to us to conduct a
harm analysis were predicated squarely on Jackson; the court concluded
that the police initiated interrogation after Pecina
asserted his right to counsel at his article 15.17 hearing and, therefore, Awaiver of
[his] right to counsel for that police‑initiated
interrogation is invalid.@[29] Montejo, however, changed the legal landscape
regarding the effect of a defendant=s waiver
of the Sixth Amendment right to counsel after an arraignment or similar
proceeding.[30]  In Montejo,
the Court overruled Jackson, in part based upon its reasoning that the
right to counsel during custodial interrogation, whether the interrogation
occurs before or after formal adversarial proceedings are initiated, is
sufficiently protected by Athree
layers of prophylaxis@ already provided by the Miranda,
Edwards, and Minnick Fifth Amendment line of cases.[31]


2.  Miranda v. Arizona

In Miranda,
the Supreme Court held that the Fifth Amendment prohibition against compelled
self-incriminationCthat [n]o person . . . shall be
compelled in any criminal case to be a witness against himself@Crequires
that a suspect subject to Acustodial
interrogation@ has the right to remain silent;
to further ensure that right is protected, he has the right to consult with
counsel and to have counsel present during questioning, and the police must
explain these rights to the accused prior to any questioning.[32]  In the Miranda context, Acustodial
interrogation@ means questioning initiated by
law enforcement officers after a person has been taken into custody or
otherwise deprived of his freedom in any significant way.[33]  Significantly, the Court in Miranda
held that if the accused indicates he wishes to remain silent, Athe
interrogation must cease.@[34]  And if the accused requests counsel, Athe
interrogation must cease until an attorney is present.@[35]  Miranda thus declared that the accused
has a Fifth (and Fourteenth) Amendment right to have counsel present during
custodial interrogation.[36]

In Miranda,
the Court further concluded that, A[i]f the interrogation continues without the presence of an
attorney and a statement is taken, a heavy burden rests on the government to
demonstrate that the defendant knowingly and intelligently waived his privilege
against self-incrimination and his right to retained or appointed counsel.@[37]  

3.
Edwards v. Arizona

In Edwards,
the Court determined that traditional standards of waiver are not sufficient to
protect the Miranda rights, and that Aadditional
safeguards@ are necessary at a subsequent
interrogation if an accused has previously requested counsel.[38]  Accordingly, the Court reaffirmed Miranda=s absolute
statement that once the accused exercises his right to counsel, Athe
interrogation must cease until an attorney is present.@[39]  Confirming that it is inconsistent with Miranda
for authorities Aat their instance,@ to
interrogate an accused in custody if he has clearly asserted his right to
counsel, and as a corollary to Miranda, the Court in Edwards established
a rigid, Abright-line@ rule
that an accused in custody who has Aexpressed
his desire to deal with the police through counsel is not subject to further
interrogation until counsel has been made available to him unless the accused,
himself, initiates further communications, exchanges, or conversations with the
police.@[40]  If the police nevertheless subsequently
initiate an encounter in the absence of counsel, the suspect=s
statements are  presumed  involuntary and are inadmissible in evidence
against him even if he executes a waiver and even if the waiver would be
considered voluntary under traditional standards.[41]  The Edwards rule is Adesigned
to prevent police from badgering a defendant into waiving his previously
asserted Miranda rights.@[42]
Thereafter, in Minnick, the Court held that the protection of a suspect=s Fifth
Amendment right to counsel by Edwards does not end for police-initiated
interrogation merely because an accused has once consulted an attorney; the
attorney must be present at the interrogation.[43]

However,
an accused may still waive his right to counsel after he has invoked it.  In Oregon v. Bradshaw, the Supreme
Court clarified Edwards by establishing a two-step procedure to
determine whether a suspect has waived his previously invoked Fifth Amendment
right to counsel.[44]  The first step requires proof, as mandated by
Edwards, that the suspect himself initiated further communication with
the officers after invoking his right to counsel; the second step requires
proof that after the suspect reinitiated contact, he voluntarily, knowingly,
and intelligently waived the right to counsel.[45]  If this two-step waiver requirement is shown,
the Edwards rule is fully satisfied.[46]

4.  Michigan v. Jackson

In Jackson,
the Court created a presumption that any waiver of the Sixth Amendment right to
counsel is likewise invalid if police initiate interrogation once a defendant
has invoked his right to counsel at an arraignment or formal preliminary
hearing initiating criminal proceedings, analogizing to the similar
prophylactic rule established in Edwards for protection of the Fifth
Amendment-based Miranda right to have counsel present at any custodial
interrogation.[47]  Because doubts must be resolved in favor of
protecting constitutional rights, the Court held in Jackson, citing Edwards,
that in the Sixth Amendment context, any waiver under traditional voluntariness
standards subsequent to the invocation of counsel would, as in Edwards,
be likewise presumed insufficient to waive the right to counsel in the context
of police-initiated interrogation.[48]


5.  Montejo
v. Louisiana

The right
to counsel under the Fifth Amendment must be affirmatively invoked by the
accused by a clear and unequivocal request for counsel prior to or during
questioning.[49]  The Sixth Amendment right attaches Aautomatically@ at the
initiation of adversary criminal proceedings.[50]  Both of the defendants in the consolidated
cases in Jackson had requested appointed counsel at preliminary hearings
before being interrogated by police.[51]  In Montejo,
the defendant did not request counsel but stood mute at his preliminary hearing
required by Louisiana law, at which the court nevertheless ordered counsel
appointed under its state procedural rules.[52]  Three hours later, and before Montejo could meet with counsel, detectives visited him in
prison and read him his Miranda rights, after which he accompanied them
on an excursion to locate the murder weapon and wrote an inculpatory
letter of apology to the victim.[53]  

Montejo sought to suppress the letter of apology as
evidence at trial by extending Jackson to his situationCin which
counsel had been appointed even though not expressly requested.[54]  The Louisiana Supreme Court held that an
actual request for counsel or other assertion of the Sixth Amendment was
required to trigger the Jackson rule presuming invalidity of any waiver
of the Sixth Amendment right to counsel.[55]  The United States Supreme Court considered
that approach of limiting Jackson to cases in which the defendant
actually requests counsel at his first preliminary hearing, but the Court noted
its unfairness in over half of the states in which counsel is automatically
appointed at preliminary hearings such that defendants in those states have no
opportunity to invoke the right to counsel themselves.[56]  But the Court also refused to extend Jackson=s presumption
to cases in which no request is made but counsel has been appointed or the
defendant is otherwise represented.[57]  

Refusing
to accept either approach, the Court instead sua
sponte re-evaluated Jackson and concluded
that Jackson=s extension of the Edwards
bright-line rule to the Sixth Amendment right to counsel is Aunworkable.@[58]
Significantly, the Court based its decision, in large part, on its conclusion
that the Sixth Amendment right to counsel is adequately protected by the
existing guarantees of the Fifth Amendment by virtue of Miranda and Edwards,
and because, under a cost-benefit analysis, the Asubstantial
costs@ of
adding the exclusionary rule of Jackson on top of those in Miranda
and Edwards far outweigh any Amarginal
benefits.@[59]  Accordingly, the Montejo
Court held: AMichigan v. Jackson should be
and now is overruled.@[60]

6.  Hughen v.
State

After the
court of criminal appeals remanded this case to us, and after the Supreme Court
issued Montejo, the court of criminal appeals
handed down its opinion in Hughen.[61]  In Hughen,
the court analyzed the effect of Montejo on a
defendant=s right to have counsel present
during interrogation after the Sixth Amendment right to counsel has attached
under circumstances similar to this case.[62]  In Hughen,
after the defendant was arrested and taken to the county jail, police took him
before a magistrate pursuant to article 15.17.[63]  The magistrate explained the charges and
informed him of his Miranda rights.[64]  Hughen acknowledged
that he understood his rights and asked that counsel be appointed to represent
him.[65]  Three hours later, without waiting for the
appointment of Hughen=s counsel,
officers took Hughen from his jail cell and placed
him in an interview room.[66]  One of the officers explained to Hughen his Miranda rights again, and then asked
three questions:  

(1) ADo you understand your rights,
[Hughen]?@ Hughen nodded in the
affirmative. (2) AAnd understanding these
rights, do you need to have a lawyer present before any questioning?@ He answered, AI guess not right now, no.@ (3) AHaving these rights in
mind, will you talk to me now?@ Hughen answered, AOkay.@[67]  

 

Before signing the waiver form, Hughen asked the officers, AThis ain=t waiving
my right for an attorney, is it?@[68]  An officer responded, ANo,
sir.  This is just talking with us about
what happened and what was going on and all that good stuff.@[69]  Hughen then signed
a waiver, and the officers interrogated Hughen
immediately after he signed.[70]  The court of criminal appeals held that Hughen could no longer rely upon Jackson, since it
has been overruled by Montejo, that the Sixth
Amendment thus does not bar police-initiated interrogation after an accused has
previously asserted his right to counsel, that Hughen=s subsequent
waiver of counsel was valid, and that Hughen=s
statement to police was properly admissible against him at trial.[71]  

Hughen is analogous to this case with respect to Pecina=s Sixth
Amendment right to counsel.  Officers
brought the magistrate to the hospital to administer warnings to Pecina pursuant to Article 15.17 of the Texas Code of
Criminal Procedure.  The magistrate read
him his rights in Spanish and asked him if he wanted a court‑appointed
attorney.  He said that he did.  But without waiting for the appointment of
counsel, the magistrate then asked Pecina if he
wanted to speak to the detectives, and he said, AYes.@  Before speaking with the officers, Pecina signed the AAdult
Warning Form,@ which informed him that he had
the right to counsel and the right to remain silent, that he did not have to
speak to the police, that he was not required to make a statement, and that he
had the right to stop any interview or questioning at any time.  The officers then read Pecina
the Miranda warnings twice more in Spanish, once before they started
recording the interview and again after turning on the recording device, and Pecina signed a waiver of counsel.  

Like the
defendant in Hughen, Pecina
can no longer rely on Jackson=s rule
that Aif police
initiate interrogation after a defendant=s
assertion, at an arraignment or similar proceeding, of his right to counsel,
any waiver of the defendant=s right
to counsel for that police‑initiated
interrogation is invalid.@[72]  Thus, we come to the same issue addressed by
our original decision: whether Pecina=s
statements to the detectives in the hospital were made after a voluntary,
knowing, and intelligent waiver of his Sixth Amendment right to counsel.[73]

B.  Sixth Amendment Right to Counsel  

After Montejo, under the Sixth Amendment, police may
reinitiate a custodial interrogation after a defendant=s right
to counsel has attached and been invoked by him; the Sixth Amendment right to
counsel is no longer presumed invalid in that circumstance but may be waived,
so long as relinquishment of the right is voluntarily, knowingly, and
intelligently given.[74]  As held by the majority in Montejo, the defendant may now waive the Sixth
Amendment right whether or not he is already represented by counsel; the
decision to waive need not itself be counseled.[75]
 And when a defendant is read his Miranda
rights (which include the right to have counsel present during interrogation)
and agrees to waive those Fifth Amendment rights, that usually Adoes the
trick@ to also
waive the Sixth Amendment right to counsel, even though the Miranda
rights do not refer to the Sixth Amendment right to counsel and have their
source in the Fifth Amendment.[76]

Giving
due deference to the trial court=s
findings of fact, we note that the trial court=s finding
that Pecina requested to have the detectives speak to
him is incorrect because it is contrary to the undisputed record.  We also note that the trial court=s
conclusion that the statement was Avoluntary@ is not
sufficient to establish waiver of Pecina=s Sixth
Amendment right to counsel.  The waiver
must be Aknowing
and intelligent@ as well as voluntary.[77]  However, we need not determine the issue of
waiver of Pecina=s Sixth
Amendment right to counsel because, even if we held that waiver of the Sixth
Amendment right was established, we are still faced with the issue of Pecina=s Fifth
Amendment right to counsel, which is, as addressed below, dispositive.    

C.  Fifth Amendment Right to Counsel

In
overruling Jackson, the majority in Montejo
reasoned that Jackson=s purpose
was being adequately served by other means, namely, the protection provided by
the AMiranda -
Edwards - Minnick line of cases,@ which
the Court said, Ais not in doubt,@ and
under which a defendant in custody who does not want to speak to the police
without counsel Aneed only say as much when he is
first approached and given the Miranda warnings.@[78]  At that point, the Court said, not only must
the immediate contact end, 

but Abadgering@ by later requests is prohibited.  If that regime suffices to protect the
integrity of Aa suspect=s voluntary choice not to
speak outside his lawyer=s presence@ before his arraignment,
[] it is hard to see why it would not also suffice to protect that same
choice after arraignment, when Sixth Amendment rights have attached.  And if so, then Jackson is simply superfluous.[79]

 

In other
words, the Court explained, although Miranda and Edwards protect
the Fifth Amendment, not Sixth Amendment, rights, Athat
is irrelevant.  What matters is
that these cases, like Jackson, protect the right to have counsel during
custodial interrogationCwhich right happens to be guaranteed
(once the adversary process has begun) by two sources of law.@[80]  Assuming the defendant is in custody, Athe
doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously
ensure the voluntariness of the Sixth Amendment waiver.@[81]  Concluding, the Court reiterated that its
overruling of Jackson was based Ain part
on the protections already provided by Edwards.@[82] 

Subsequently,
in Hughen, the court of criminal appeals
observed that, after Montejo, while the Sixth
Amendment does not bar police-initiated interrogation of an accused who has
previously asserted his right to counsel, Athe Fifth
Amendment does bar police-initiated interrogation of an accused who, in the
context of custodial interrogation, has previously asserted his right to
counsel unless the accused=s counsel
is actually present.@[83]  Because Hughen had
raised only the issue of his Sixth Amendment right to counsel in the court of
criminal appeals, not his Fifth Amendment right, the court of criminal appeals
noted in its opinion in Hughen that it did not
grant review to consider that complaint.[84]


In
contrast, Pecina did raise his Fifth Amendment right
to counsel in the trial court, in this court, and in his petition for
discretionary review.  The court of
criminal appeals did not reach the Fifth Amendment issue in this case, not
because Pecina failed to raise it, but because it
granted relief to Pecina on his Sixth Amendment
issue, reversing this court=s
decision based on Pecina=s Sixth
Amendment right under Jackson.  

While
Jackson no longer stands, the underlying basis for the court of criminal
appeals=s
reversal does.  In reversing this court=s
decision that Pecina, himself, reinitiated contact
with the police, the court of criminal appeals stated, A[A]nswering >yes= when
asked if he wanted to speak to detectives does not indicate that [Pecina] initiated the contact . . . .@[85]  To the contrary, the court said, A[i]n no way does this indicate that [Pecina]
himself initiated contact or opened the dialog with the authorities.@[86]  Thus, the court held, Athere was
no initiation of contact with the police by [Pecina].  Just as in Edwards, the State showed
only that [Pecina] responded to further
police-initiated questioning.@[87]            These
holdings by the court of criminal appeals, while addressing Pecina=s Sixth
Amendment right to counsel, rely on Edwards, a Fifth Amendment
case.  The same holdings apply to the same
facts in the context of the Fifth Amendment, as confirmed by the Supreme Court
in Montejo.[88]  Thus, they apply equally to Pecina=s
complaint that he was denied his Fifth Amendment right to counsel and compel us
to re-examine our holding on that issue.[89]  That is, the court of criminal appeals=s holding
that Pecina did not initiate contact with the police
by answering Ayes@ to Judge
Maddock=s
question is controlling in a Fifth Amendment analysis as well as in the Sixth
Amendment context.  

The Miranda-Edwards-Minnick
Fifth Amendment regime was not abolished or modified, nor was it in any
other way affected by Montejo.  The Court in Montejo
assures us that the Miranda-Edwards-Minnick regime is Anot in
doubt.@[90]  Miranda and Edwards are still
the law for suspects in custody subjected to police interrogation, regardless
of the overruling of Jackson, which had merely added another protective
layer for protection via the Sixth Amendment right.  To protect the Fifth Amendment privilege
against self-incrimination, the police still may not initiate custodial interrogation
of a suspect who has previously requested assistance of counsel.  AOnce a
suspect has invoked the right of counsel during questioning by police, the
Fifth Amendment right to counsel has been invoked and all interrogation by
the police must cease until counsel is provided or the suspect reinitiates
conversation.@[91]  The Miranda-Edwards-Minnick rule Adoes not
take into account the good intentions of the individual police officer, the
lack of official coercion or badgering in the particular case, or the actual
voluntariness of a person=s custodial statement.@[92] Edwards
still Arepresents
a bright and firm constitutional rule.@[93]  When Pecina
requested appointment of counsel, which is undisputed, he invoked his Fifth
Amendment right to consult with and have counsel present, as the magistrate
explained that right to him, at any police questioning.  The police were waiting in the hall to
question him at that moment.  








The
dissent astonishingly asserts that what occurred in this case was somehow only
a Anoninterrogative interaction@ between Pecina and the State, as to which the Miranda-Edwards
line of cases is not invoked.  Dissenting op. at 1. 
If there was no interrogation, where did the confessions by Pecina come from? 
Not only does this assertion ignore the record but, if the dissent is
referring to the article 15.17 hearing, it ignores the very purpose of such a
procedure, which is required under Texas law to advise a suspect who has been
arrested of his Fifth Amendment rights, including his right to counsel and, if
indigent, to appointment of counsel under Miranda.[94]  As pointed out in a similar case, an article
15.17 proceeding Ais an integral stage in a
defendant=s invocation of the Fifth
Amendment right to counsel to protect him against self-incrimination.@[95] 

Moreover,
in further answer to the dissent, we are not Are-import[ing] Miranda-Edwards protections@ into the
Sixth Amendment by our holding that the admission into evidence of Pecina=s
statements violated the Fifth Amendment, for the simple reason that we are
applying those protections to this defendant=s rights
under the Fifth Amendment, not under the Sixth. 
See Dissenting op. at 2.  In response to the dissent=s
insinuation that Montejo held that a
defendant cannot invoke his right to counsel at a preliminary hearing under the
Fifth Amendment, Montejo made no such
holding.[96]  See Dissenting op.
at 1B2.  In Montejo,
the accused stood silent; he did not request counsel at his preliminary
hearing.[97]  The sole issue was waiver of Montejo=s Sixth
Amendment right to counsel.[98]  Montejo did
not involve the Fifth Amendment right to counsel.  And, as previously noted, Montejo
reaffirms that the Miranda-Edwards line of cases still applies to
preserve the Fifth Amendment privilege against self-incrimination and a
defendant=s correlative right to counsel to
protect that right.[99]  As explained above, it is partly because of
the overlapping protections afforded for the Fifth Amendment right to counsel
that Montejo overruled Jackson.[100]

We also
disagree with the dissent=s assertion that whatever
occurred at the article 15.17 hearing did not implicate Edwards because Pecina had somehow Anot yet
been approached for interrogation.@  Dissenting op. at 4.  The record belies any such interpretation.[101]  The detectives did not just happen to show up
at Pecina=s
hospital room.  They went to the hospital
to arrest Pecina and to interrogate him and brought
with them the magistrate to administer his Miranda warnings; they walked
into his room with the magistrate; the magistrate explained to Pecina that the detectives wanted to talk to him; and they
waited in the hall while she administered the warnings.  After he had invoked his right to counsel,
they proceeded to re-enter the room and conduct their interrogation after
reading Pecina his Miranda rights a second and
third time.  As the court of criminal
appeals held, the magistrate was acting on behalf of the officers in initiating
the interrogation.[102]  The detectivesCacting
through the magistrateCinitiated interrogation by asking
Pecina if he still wanted to talk to them.[103]

The
dissent complains that, if our interpretations of the Montejo
and Hughen opinions are correct, the police
will need to Across their fingers@ that a
defendant only raises a complaint of the Sixth Amendment and not the Fifth
Amendment regarding validity of a statement after invocation of counsel as in
this case.  Dissenting
op. at 6.  But if the dissent=s
arguments are correct, the police need only take a magistrate with them to
conduct any custodial interrogation and Across
their fingers@ behind their backs while letting
the magistrate first administer the Miranda warnings, and then they may
ignore with impunity any attempt by the defendant to request appointment of
counsel from the magistrate, making a mockery of Miranda.  

Finally,
the dissent urges that Pecina=s
confession must be admissible because he is guilty of the crime.  Dissenting op. at 11B12.  The short answer to that amazing argument is
that, in this country=s justice system based on the
rule of law, the test for whether a confession is admissible is not based on a
subjective belief by judges that the defendant is guilty.  

Because Pecina did not initiate the questioning by the police after
asserting his right to counsel (as held by the court of criminal appeals in
reversing this court=s prior decision) and the police
moved forward with more Miranda warnings and then their interrogation,
any subsequent waiver of Pecina=s right
to counsel is presumed invalid, and we do not proceed to the second step under Bradshaw
of determining whether his subsequent waiver was made voluntarily,
knowingly and intelligently.[104]  Because Awaiver@ of his
right to counsel based upon the Fifth Amendment must be presumed invalid under Edwards,[105]
the trial court abused its discretion in admitting Pecina=s statements
taken thereafter in violation of the Fifth Amendment.

D.  Harm Analysis

A trial
court=s
erroneous admission of a defendant=s
statement in violation of the Fifth Amendment is federal constitutional error
subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(a).[106]  Where the record reveals constitutional
error, reversal is required unless we determine beyond a reasonable doubt that
the error did not contribute to the conviction or punishment.[107]  Error in admitting a defendant=s
statement is not harmless beyond a reasonable doubt if there is a reasonable
likelihood that the error materially affected the jury=s
deliberations.[108]  We should Acalculate,
as nearly as practicable, the probable impact of the error on the jury in light
of the other evidence.@[109]  However, and despite the dissent=s cry
that Pecina is a Aguilty
and possibly dangerous criminal,@ whether
admission of an inculpatory statement by a defendant
was harmful is not determined solely on the basis of whether there was
sufficient evidence, independent of the defendant=s
statement, to support the verdict.[110]
The applicable harmless error analysis asks whether admission of the statement
contributed to the verdictCregardless
of whether there is independent evidence sufficient to sustain the verdict of
guilt.[111] 

A
defendant=s statement implicating himself in the commission of the offense is unlike any other
evidence that can be admitted against the defendant.[112]  AA
defendant=s confession is probably the most
damaging evidence that can be admitted against him. . . .  Certainly, confessions have profound impact
on the jury, so much so that we may justifiably doubt its ability to put them out
of mind even if told to do so.@[113]  Moreover, A[i]f the jury believes that a defendant has admitted the crime, it will doubtless be tempted to rest its decision on
that evidence alone, without careful consideration of the other evidence in the
case.@[114]  Mindful of these admonitions, we do not focus
on the propriety of the outcome but on the integrity of the process that led to
conviction and punishment.[115]

The
theory of the defense was that the State failed to prove its case beyond a
reasonable doubt because the palm print on the knife was not that of Pecina,
and DNA from a third contributor was on the mirror.  The defense argued that a third person may
have been the perpetrator and attacked both Pecina
and his wife from behind and that the prosecution=s
investigation was inadequate and incomplete in failing to obtain sufficient DNA
samples from the room and the knife to prove Pecina=s
guilt.  There were no eye-witnesses. Pecina and his wife were last seen some four hours before
her sister, Gabriela, discovered the bloody scene in the bedroom.

The State
agrees that its case was circumstantial but argues that it was a Avery
strong circumstantial evidence case@ even
without Pecina=s
statements.  Gabriela=s
testimony was conflicting as to whether the front door was locked when she
arrived.  The State argues that the
defense produced no evidence that anyone entered or left the apartment during
that four-hour period; but it was not the defense=s burden
to do so.  

The
neighbor who called 911 said that Pecina opened his
eyes, which the neighbor thought seemed threatening.  Gabriela testified that Pecina
stood up and came at her with his hands, which she thought was Alike
angry,@ before
he fell.  But it was undisputed that both
the deceased and Pecina had suffered serious stab wounds
and that Pecina required life-saving measures.  The medical examiner testified that Pecina appeared to have both cuts and stab wounds that
could be consistent with having been attacked from behind.  And, although the crime scene investigator
who inspected Pecina=s wounds
shortly after the occurrence believed some to have been Ahesitation@ cuts
consistent with someone injuring himself, he admitted that he had no way of
knowing if the wounds suffered by Pecina were
self-inflicted. 

The
latent palm print on the mirror matched that of Pecina,
but he lived at the apartment and was bleeding from his own injuries.  The knife used in the stabbing was from the
apartment=s kitchen.  But the crime scene investigator testified
that the latent palm print in blood found on the knife, which he had only
compared with Pecina=s palm
print the week before trial, was not a Amatch@ for Pecina or anyone else who was known to have been present
that evening.  Samples of blood collected
from the bedroom revealed DNA of a third contributor, and the senior DNA
analyst in the medical examiner=s office
testified that the medical examiner=s office
was never asked to exclude specific individuals as the source.  No DNA sample was taken from the mirror, and
the knife was never tested for DNA.  

The
defense called as its expert witness Dr. Robert Benjamin, a molecular biologist
specializing for over forty years in genetics and DNA, who was recognized as
such by the expert for the prosecution and who had often been consulted by law
enforcement and district attorneys=
offices.  Dr. Benjamin was critical of
the lack of completeness and lack of documentation of the DNA samples collected
from the scene, particularly in light of two samples that came from another
contributor, which he found significant; and he opined that the fact that no
sample was taken from the murder weapon was surprising as well as significant.  He characterized the lack of a Amatch@ with Pecina for the palm print from the knife as a red flag that
would have called for more testing.

The State=s theory,
supported by the testimony of the neighbor, the neighbor=s
daughter, and the deceased=s sister,
Gabriela, was that the deceased, who had previously come to the United States
to work with her father and sister, was unhappy that Pecina had come from Mexico to join her; she wanted a
divorce but he did not.  She had planned
to attend a concert that night with Gabriela and Pecina
after they got off work.  The State
argued that Pecina=s anger
at his wife when she arrived home escalated in the apartment and led to the
stabbing.  

We agree
with the State that ample circumstantial evidence supported its theory.  Nevertheless, in the presentation of its case
to establish Pecina=s guilt,
the State relied extensively on Pecina=s
statements taken from him at the hospital to show:  that there was no third person present at the
scene when the stabbing occurred, that Pecina was
consumed with anger that the deceased did not want him, and that he used the
knife to cut her.  The State showcased Pecina=s
statements by presenting, in full, the testimony of the magistrate and the two
investigators who took Pecina=s
recorded and written statements.  The
testimony of those three witnesses regarding the magistrate=s
conducting of the bedside warnings and the following interrogation, coupled
with the reading of both Pecina=s written
statement and a transcript of his recorded statement to the jury, consume some
sixty-five pages of the three-volume record of the testimony.  

In
closing argument in rebuttal, the State repeatedly focused the jury=s
attention on Pecina=s
statements as being all the jury needed to consider, and as rendering any gaps
in its circumstantial evidence immaterial. 
The State argues on remand that the confession merely Aconfirmed@
independent evidence that the jury already had.   But at trial, the State argued the converse,
that all of its other evidence merely corroborated the confession, stating,

The piece of evidence that you should be looking at that the Defendant has
conveniently not talked about a whole lot, is the confession.  Why should we be worried about the DNA when .
. . the Defendant has confessed to killing his wife.  And is this an incomplete investigation?  There=s over 70 pieces of evidence here in front of you.


 

Ladies and gentlemen, if you want to know the straight scoop, if you
want to know what really happened, the best way to do it is to get it straight
from the horse=s mouth.

 

From the Defendant=s mouth we heard this. 
They were arguing that she was unhappy with him and did not want to be
with him anymore.  That
she had told him that she was going out dancing without him that night and that
he became irate.  He became
angry.  He got a knife.  He started struggling with the victim.  And when he was asked point blank by
Detective Danny Nutt and David Frias, did you cut
Michelle with a knife, the answer was, yes, he did.

 

There=s no third party here,
ladies and gentlemen.  They even asked
him point blank, was there anybody else present in the room during the time of
this offense?  He said no. If there
was a chance that he could have [been] snuck up from behind . . . why didn=t he tell that to the
detectives?  He had his chance.  It=s
a red herring.  It=s a Defense tactic to keep
you from looking at the confession that there might have been someone else in
the apartment. . . . Anything is possible on TV, but this is reality.  And that is not a reasonable doubt, and that
is the burden here.  The evidence is
overwhelming. . . .  He even admits to
you that he did it. 

 

. . . [W]e know he=s telling the truth, that
he wasn=t coerced into giving that statement.  You=ve heard from the testimony
of the judge who magistrated him that he was not
coerced and that he was cooperative. . . . [Emphasis added].

 

 

The State
used Pecina=s
statements as the only direct evidence the jury needed of his guilt and motive
as well as to negate any shred of the defense=s
arguments that the State might not have carried its burden.  The dissent even claims that Pecina=s
statements are essential for his conviction and that, without them, his crime
will go unpunished.  These arguments only
strengthen our conclusion C it is
impossible to say there is no Areasonable
possibility@ that the erroneously admitted
statements could have contributed to Pecina=s
conviction.  We therefore cannot with confidence
conclude that admission of his statements was harmless beyond a reasonable
doubt. 




VII.  Conclusion

We
sustain Pecina=s first
point as to the violation of his Fifth Amendment rights.  We reverse the judgment of the trial court
and remand this cause to that court for a new trial.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER and WALKER, JJ.; and
DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment). 

 

HOLMAN, J., filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  July 15, 2010

 




 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.  2-05-456-CR

 

 

ALFREDO LEYVA PECINA                                                                 APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                                       ------------

 

                             DISSENTING OPINION ON
REMAND

 

                                                       ------------

Because
the United States Supreme Court=s
decision in Montejo and the court of criminal
appeals= decision
in Hughen stand for the proposition that the AMiranda-Edwards
regime@ does not apply to Anoninterrogative types of interaction between the defendant
and the State,@ and because that is the type of
interaction that I believe occurred in this case, I respectfully dissent from
the majority=s holding that Pecina invoked his Fifth Amendment rights when he requested
the appointment of counsel while being arraigned.  See Montejo v.
Louisiana, 129 S. Ct. 2079, 2091 (2009) (reasoning that the Miranda-Edwards
line of cases is not necessarily invoked during a preliminary hearing); Hughen v. State, 297 S.W.3d
330, 335 (Tex. Crim. App. 2010) (reasoning that the Fifth Amendment bar on
police-initiated interrogation is applicable only Ain the
context of custodial interrogation@).  But more than that, the majority=s holding
today basically re-imports Miranda-Edwards protections into an Aarraignment
or similar proceeding,@ effectively reviving JacksonCa holding
that I disagree with and feel obliged to address.  See Michigan v. Jackson, 475 U.S. 625,
635, 106 S. Ct. 1404, 1411 (1986) (holding that if police initiate
interrogation after defendant=s
assertion, at arraignment or similar proceeding, of his right to counsel, any
waiver of defendant=s right to counsel for that police‑initiated interrogation is invalid), overruled
by Montejo, 129 S. Ct. at 2091.

It is
apparent to me that Montejo and Hughen changed the legal landscape concerning what
police are free to do after a defendant is appointed counsel at an
arraignment or similar proceeding.  Montejo,
129 S. Ct. at 2091; Hughen, 297 S.W.3d at 335. 
Under Jackson, once a defendant=s Sixth
Amendment rights had attached during an arraignment, police were forbidden from
initiating interrogation.  Jackson, 475 U.S. at 635, 106 S. Ct. at 1411.  This is so because Jackson represented
a Awholesale
importation of the Edwards rule into the Sixth Amendment.@  Montejo, 129 S.
Ct. at 2086 (citing Texas v. Cobb, 532 U.S. 162, 175, 121 S. Ct. 1335,
1342 (2001)).  Under Edwards, once
a defendant invokes his right to have counsel present during custodial
interrogation, valid waiver of that right cannot be established by showing only
that he responded to police‑initiated
interrogation after being again advised of his rights.  Edwards, 451 U.S. at
485, 101 S. Ct. at 1885.  As the
majority points out, Edwards is still in full effect.  But after Montejo,
the Miranda-Edwards regime of cases does not apply in the context of an
arraignment or preliminary hearing any longer. 
Montejo, 129 S. Ct. at 2091. 
The Montejo court specifically
expressed that A[w]hat matters for Miranda and
Edwards is what happens when the defendant is approached for
interrogation, and (if he consents) what happens during the interrogationCnot what
happened at any preliminary hearing.@  Id. (emphasis added).  Thus, now that the Montejo
court has overruled Jackson, neither a defendant=s request
for counsel at arraignment or similar proceeding nor appointment of counsel by
a court gives rise to a presumption that any subsequent waiver by a defendant
to police‑initiated interrogation is
invalid.  Id.  The Hughen
court recognized this by stating that A[a]fter Montejo, the Sixth Amendment does not bar police‑initiated
interrogation of an accused who has previously asserted his right to counsel.@  Hughen, 297 S.W.3d at 335.








In this
case, pursuant to articles 15.17 and 26.04 of the Texas Code of Criminal
Procedure, police brought a magistrate to the hospital for the purpose of
arraigning Pecina. This was nothing more than a Apreliminary
hearing.@ Montejo,
129 S. Ct. at 2091.  Indeed, the
court of criminal appeals in Hughen referred
to this procedure as an Ainitial appearance.@   Hughen, 297 S.W.3d
at 332.  Therefore, whatever
occurred at that preliminary hearing did not even implicate Edwards because
Pecina had not yet been approached for interrogation
nor had he ever unambiguously expressed his desire to deal with the police only
through his attorney.  Montejo,
129 S. Ct. at 2091.  I believe
that the majority=s Fifth Amendment analysis is
unnecessary, especially considering that this court expressly held in our first
opinion that Pecina had never invoked his right to
counsel.  Pecina
v. State, No. 2-05-00456-CR, 2007 WL 1299263, at *7 (Tex. App.CFort Worth, May 3, 2007) (not
designated for publication) (APecina I@).

The court
of criminal appeals overruled this court=s initial
opinion because we had failed to apply JacksonCa purely
Sixth Amendment issue.  Pecina
v. State, 268 S.W.3d 564, 569 (Tex. Crim. App.
2008) (APecina
II@).  The majority=s holding
in this present judicial orbit of Pecina=s case
hangs in part upon the court of criminal appeals=
statement in its remand that A[j]ust as in Edwards, the State showed only that [Pecina] responded to further police-initiated questioning.@  Majority op. at 31B32
(citing Pecina II, 268 S.W.3d at 572). 
That statement by the court of criminal appeals should not be
interpreted to mean anything other than if Jackson was still good law,
then the imported rule of Edwards would have prevented police from
initiating interrogation after Pecina had been
arraigned.  Jackson, however, no
longer applies; thus, the court of criminal appeals= use of Edwards-based
language is equally inapplicable.  In
fact, the Hughen court acknowledged
that, after Montejo, Edwards no longer
prevents police from questioning an accused who has previously asserted his
Sixth Amendment right to counsel.  Hughen, 297 S.W.3d
at 335. 

The
majority seems to suggest that the Hughen court
impliedly alluded that it would have decided that case
differently had Hughen preserved a Fifth
Amendment claim.  Majority
op. at 31.  I do not read the Hughen court as hinting that a Fifth
Amendment claim would have fared any better than Hughen=s Sixth
Amendment claim.  I read just the
contrary.  In dicta, because Hughen is a purely Sixth Amendment case, the Hughen court stated that invocation of a
person=s Fifth
Amendment right requires a specific type of State and defendant interaction: Athe Fifth
Amendment does bar police‑initiated
interrogation of an accused who, in the context of custodial interrogation,
has previously asserted his right to counsel during such interrogation,
unless the accused=s counsel is actually present.@   Id.
(emphasis added).  In other words,
after an arraignment or similar proceeding, police are free to initiate
interrogation of an accused who has Apreviously
asserted his right to counsel@ during
that preliminary hearing.  Id.  And if the accused then asserts his
Fifth Amendment right to counsel, interrogation must cease.  Id. at 335, n.5.  If the
only distinguishable difference between Hughen=s case
(or other cases like his) and this case is that Pecina
was savvy enough to preserve his Fifth Amendment claim for our review, then all
police are really free to do is cross their fingers and hope that once
they approach a defendant after arraignment and the defendant voluntarily
submits to an interrogation, he only contends that his Sixth Amendment rights
were violated.  

The
majority takes issue with my reasoning on this point, contending that somehow
my position is making a Amockery of Miranda.@  Majority op. at 38.  As the majority puts it, if my point is
correct, Athe police need only take a
magistrate with them to conduct any custodial interrogation . . . and
then they may ignore with impunity any attempt by the defendant to request
appointment of counsel from the magistrate.@  Majority op. at 38.  

First and
foremost, my rebut to this stance by the majority is
that I do not have such a harsh view of our law enforcement.  I read the record in this case as
demonstrating that the officers were doing everything that they could to inform
Pecina of his rights. 
They complied with the mandates of article 15.17 of the Texas Code of
Criminal Procedure by taking a magistrate to him, and before they questioned
him, they twice read to him his Miranda rights.  Pecina II,
268 S.W.3d at 567.  To expect any more of law enforcement would
invite the very evil that the Montejo court
was concerned with in overruling JacksonCdeterring
Alaw
enforcement officers from even trying to obtain voluntary confessions.@  Montejo, 129 S. Ct. at 2091. 
In fact, it speaks heavily to the voluntary nature of Pecina=s statement
that he had been warned numerous times concerning his rights to have counsel
present when the officers interviewed him, and yet he still chose to confess to
his crime. 

Furthermore,
Miranda cannot be mocked if it is not at issue.  As the court of criminal appeals noted in its
remand, Judge Maddock testified that Pecina Adid not
indicate that he wanted counsel present before he talked to the detectives.@  Pecina II,
268 S.W.3d at 565.  Despite this important fact, the majority
summarily concludes that Pecina invoked his right to
have counsel present with him during interrogation. 

In an
attempt to transform Pecina=s request
for the appointment of counsel into an invocation of counsel for Miranda purposes,
the majority insists that Judge Maddock=s
questionCafter Pecina had requested the appointment of counselCconcerning
whether he still wanted to talk to the officers was an action Aon behalf
of the officers in initiating the interrogation.@  Majority op. at 37.  The majority even ascribes its view to the
court of criminal appeals.  What the
court of criminal appeals actually held was that Judge Maddock=s
involvement in this case marked Athe
initiation of adversary judicial proceedings that trigger attachment of the
Sixth Amendment right to counsel.@  Pecina II,
268 S.W.3d at 568 (emphasis added).  That statement says nothing to whether Pecina was being subjected to custodial interrogation when
Judge Maddock asked her question.   See Roquemore
v. State, 60 S.W.3d 862, 867 (Tex. Crim. App.
2001) (reasoning that actions that normally attend an arrest and custody, such
as informing a defendant of his Miranda rights, do not necessarily
constitute a custodial interrogation); see also Montejo,
129 S. Ct. at 2091 (stating that the Supreme Court has never held that a
suspect can invoke Miranda rights in a context other than custodial
interrogation).

But even
if Judge Maddock=s
question to Pecina whether he wanted to speak to the
detectives was part of a conspired interrogation between Judge Maddock and the officers, the majority=s
position is still fatally flawed because Pecina never
indicated that he wanted counsel present during interrogation. Pecina II, 268 S.W.3d
at 565 (A[Judge Maddock] said that [Pecina] did
not indicate that he wanted counsel present before he talked to the detectives.@).  The majority completely ignores firmly
established law that in order to invoke counsel for Miranda purposes, a
suspect=s desire
to have counsel present during questioning must be unequivocal and unambiguous;
otherwise, police officers are not even required to seek clarification, much
less halt their interrogation.  See
State v. Gobert, 275 S.W.3d
888, 891 (Tex. Crim. App. 2009) (reasoning that a clear invocation of the right
to counsel is an objective inquiry whereby a suspect must articulate his desire
to have counsel present sufficiently clearly that a reasonable police officer
in the circumstances would understand the statement to be a clear invocation of
the right to counsel present during interrogation)(citing Davis v. United
States, 512 U.S. 452, 461B62, 114
S. Ct. 2350, 2371 (1994)); see also Dalton v. State, 248 S.W.3d 866, 869 (Tex. App.CAustin,
2008 pet. ref=d), cert. denied, 130 S.
Ct. 555 (2009) (reasoning that a suspect=s statement
to officers must be a direct and unequivocal assertion of the right to have
counsel present during interrogation before officers are required to halt any
further questioning).  

What the
majority does today is effectively revive Jackson and hold that any
defendant who is arraigned pursuant to articles 15.17 and 26.04 of the Texas
Code of Criminal Procedure can never be approached by police and asked whether
the defendant wants to voluntarily confess to the crime for which he stands
accused.  Jackson, 475 U.S. at 635, 106 S. Ct. at 1411.  This holding is contrary to both Montejo and Hughen.  See Montejo,
129 S. Ct. at 2091; Hughen, 297 S.W.3d at 335.  

The
majority applies the Miranda-Edwards regime to this preliminary hearing
whereby Pecina affirmatively stated that he wanted a
court-appointed attorney.  The majority
builds its premise on the notion that the ACourt in Montejo assures us that the Miranda-Edwards-Minnick
regime is >not in doubt.=@ Majority
op. at 32B33 (citing Montejo,
129 S. Ct. at 2090).  I agree that
the Miranda-Edwards regime is not in doubt.  But there is a distinction between whether
that regime is in doubt and whether it applies to a certain set of facts.  As the Montejo
court stated, although the Miranda-Edwards regime is not in doubt,
those protections are Anarrower than Jackson.@  Montejo, 129 S. Ct. at 2090.

The
majority treats the Montejo decision as
a simple exercise in eliminating redundant case law and as if Jackson and
the Miranda-Edwards regime provided the same exact protections.  While it is true that the Montejo
court reasoned that an individual=s rights
were adequately protected by the Miranda-Edwards regime, the Supreme
Court had far more negative things to say about Jackson than that it was
simply superfluous or redundant to the Miranda-Edwards regime.  The Montejo
court was concerned that Jackson was thwarting Asociety=s
compelling interest in finding, convicting, and punishing those who violate the
law.@  Id. at 2089 (quoting Moran v. Burbine, 475 U.S. 412, 425B426, 106
S. Ct. 1135, 1144 (1986)).  The Montejo court reasoned that at best, Jackson
was simply adding a protection already existing by way of the Miranda-Edwards
regime, but at its worst, Jackson was operating to eliminate Aconfession[s]
given by the free choice of suspects who have received proper advice of their Miranda
rights but waived them nonetheless.@  Montejo, 129 S. Ct. at 2089. 
The iniquity of this paradigm is that without voluntary confessions, Acrimes go
unsolved and criminals unpunished [and] these are not negligible costs.@  Id. at 2090 (citing Cobb, 532
U.S. at 175, 121 S. Ct. at 1335 (Kennedy, J., concurring)).  Not only did Jackson result in the
exclusion of voluntary confessions, thereby Aletting
guilty and possibly dangerous criminals go free,@ but it
also Adeter[ed] law enforcement officers from even trying to obtain
voluntary confessions.@ 
Montejo, 129 S. Ct. at 2086. 
Voluntary confessions, as the Montejo
court pointed out, are Anot an
evil, but an unmitigated good.@  Id. at 2090 (quoting McNeil v.
Wisconsin, 501 U.S. 171, 177, 111 S. Ct. 2204, 2212 (1991). 

There is
no better example than Pecina=s case to
show why the Montejo court overruled Jackson.  Pecina is a Aguilty
and possibly dangerous criminal@ who
fatally stabbed his very own wife over fifty times.  He acknowledged to the magistrate at his
arraignment that he was willing to talk to the police and he later admitted to
the police, voluntarily, that he had argued with his wife about her wanting to
leave him; that he had become angry; that he had cut her; and that no one else
was present but the two of them when he had done so.  Without this voluntary confession, this
heinous crime could have possibly gone unsolved and Pecina
could have gone unpunished.  That is not
a negligible cost, considering that Pecina never
indicated that he did not wish to speak to police when they approached him for
interrogation.  

Yet
again, the majority takes issue with my position in this regard.  The majority casts my position as a simple
equation:  Pecina
is guilty; thus, he should be punished.  Majority op. at 38. 
That of course is not my position and the majority fails to address my
point in its entirety.  It is not simply
that Pecina is guilty; rather, he is a guilty
criminal who voluntarily confessed to his crime.  As the Montejo
court stated, eliminating voluntary confessions obtained without coercion
and deterring law enforcement from even trying to obtain them Aare not
negligible costs.@ 
Montejo, 129 S. Ct. at 2090. 

What the
majority ultimately has done is apply the Miranda-Edwards regime to this
case based on what Pecina said at his
arraignment.   To be sure, the Montejo court was not concerned with what Astatements
[were] made at [a] preliminary hearing.@  Id. at 2091.  That is because, as the Montejo
court stated, they Ahave in fact never held that a
person can invoke his Miranda rights anticipatorily, in a context other
than >custodial
interrogation= . . . .@  Id. (quoting McNeil, 501 U.S.
at 182, n.3, 111 S. Ct. at 2212, n.3).

I would
hold that when Pecina acknowledged that he wanted
court-appointed counsel as the magistrate arraigned him at the hospital he had
not invoked his Fifth Amendment rights under Miranda-Edwards, the police
were entitled to approach him for interrogation, and he made a voluntary
statement that was properly admitted by the trial court.  Therefore, I dissent.   

 

DIXON W. HOLMAN

JUSTICE

 








PUBLISH

 

DELIVERED:  July 15, 2010











[1]See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966). 





[2]Pecina v. State, No. 2‑05‑00456‑CR,
2007 WL 1299263, at *8 (Tex. App.CFort Worth May 3, 2007)
(not designated for publication) (APecina I@), rev=d, 268 S.W.3d
564 (Tex. Crim. App. 2008) (APecina II@).





[3]Id.





[4]475 U.S. 625, 635, 106 S.
Ct. 1404, 1410 (1986), overruled by Montejo v.
Louisiana, 129 S.Ct. 2079, 2091 (2009).





[5]Pecina II, 268 S.W.3d at 569.





[6]Id.





[7]129 S.
Ct. at 2085B92.





[8]Hughen v. State, 297 S.W.3d
330, 335 (Tex. Crim. App. 2009).  





[9]See Carroll v. State, 101 S.W.3d
454, 456B59 (Tex. Crim. App. 2003)
(holding that on remand a court of appeals may reconsider an issue and decide
it on grounds not expressly contemplated by the court of criminal appeals=s order); Williams v.
State, 145 S.W.3d 737, 740 (Tex. App.CFort Worth 2004, no pet.).






[10]The magistrate=s verbal warnings and Pecina=s responses were either not recorded or
transcribed; we rely on testimony of the magistrate at the suppression hearing
prior to trial as to what was said at that preliminary hearing.    





[11]Pecina I, 2007 WL 1299263, at *7.  





[12]Id. at *8.  





[13]Id.  





[14]Id.  





[15]Id.  





[16]Id.





[17]Pecina II, 268 S.W.3d at 569B70. 





[18]Id. (quoting Jackson,
475 U.S. at 636, 106 S. Ct. at 1404). 





[19]Id. at 569.





[20]U.S. Const. amend. VI.





[21]Gideon v. Wainwright, 372 U.S. 335, 343B44, 83 S. Ct. 792, 795
(1963) (holding Afundamental nature@ of right to counsel makes
it obligatory on the States by the Adue process@ clause of the Fourteenth Amendment).  





[22]United
States v. Wade, 388 U.S. 218, 227B28, 87 S. Ct. 1926, 1932B33 (1967).





[23]Tex.
Code Crim. Proc. art. 15.17 (a) (Vernon Supp. 2009) (placing duty on arresting officer and
magistrate to administer warnings there listed).  Article 15.17(a) also requires the magistrate
to advise the person arrested that Ahe is not required to make a statement and that
any statement made by him may be used against him.@  Id.





[24]Id. (The record shows that the
magistrate set bond at $1,000,000 in this instance, but there is no indication
that the magistrate made a probable cause determination).  





[25]Id. 





[26]Rothgery v. Gillespie County, Tex., 554 U. S 191, 128 S. Ct.
2578, 2591B92 (2008) (holding right
to counsel Aattaches@ at an article 15.17
hearing, with the consequent obligation to appoint counsel); see Brewer v.
Williams, 430 U.S. 387, 388B89, 97 S. Ct. 1232, 1239B40 (1977) (holding right
to counsel attaches at the initial appearance of an accused before a judicial
officer). 





[27]Brewer,
430 U.S.
at 388B89, 97 S. Ct. at 1239B40; Massiah
v. United States, 377 U.S. 201, 204B05, 84 S. Ct. 1199, 1201B02 (1964).  





[28]475 U.S.
at 636, 106 S. Ct. at 1411.  





[29]Pecina II, 268 S.W.3d
at 568 (quoting Jackson, 475 U.S. at 636, 106 S. Ct. at 1411). 





[30]Montejo, 129 S. Ct. at 2090. 





[31]Id. at 2081 (citing Minnick
v. Mississippi, 498 U.S. 146, 153, 111 S. Ct. 486, 491 (1990); Edwards
v. Arizona, 451 U.S. 477, 484, 101 S. Ct. 1880, 1884B85 (1981); Miranda,
384 U.S. at 479, 86 S. Ct. at 1630).





[32]Miranda, 384 U.S. at 479, 86 S. Ct.
at 1630; Edwards, 451 U.S. at 482, 101 S. Ct. at 1883; see Davis v.
United States, 512 U.S. 452, 457, 114 S. Ct. 2350, 2354 (1994) (reaffirming
right to assistance of counsel under Miranda when accused is subject to Acustodial interrogation,@ which right must be
explained to him before questioning begins); see also Malloy v. Hogan,
378 U.S. 1, 6, 84 S. Ct. 1489, 1492B93 (1964) (holding that the Fifth Amendment right
against self-incrimination applies to the States through the Fourteenth
Amendment).





[33]Miranda, 384 U.S. at 479, 86 S.
Ct. at 1630; see Davis, 512 U.S. at 459, 114 S. Ct. 2350 (suspect must,
at a minimum, make some statement that can reasonably be construed to be an
expression of a desire for the assistance of an attorney@).





[34]Miranda, 384 U.S. at 479, 86 S.
Ct. at 1630.





[35]Id. at 474, 86 S. Ct. at 1627
(emphasis added).





[36]Id. at 474, 86 S. Ct. at 1627,
see Edwards, 451 U.S. at 482, 101 S. Ct. at 1883; see also Dickerson v.
United States, 530 U.S. 428, 438, 120 S. Ct. 2326, 2332 (2000) (holding
that the Miranda protections are Aconstitutionally required@).





[37]Miranda, 384 U.S. at 475, 86 S. Ct.
at 1628 (invoking Ahigh standards@ of proof for waiver of
constitutional rights enunciated in Johnson v. Zerbst,
304 U.S. 458, 58 S. Ct. 1019 (1938) that waiver must be knowing,
intelligent, and voluntary).  





[38]451 U.S.
at 484, 101 S. Ct. at 1884B85.  





[39]Id. at 486, 101 S. Ct. at
1885 (quoting Miranda, 384 U.S. at 474, 86 S. Ct. at 1627).  





[40]Id. at 484B85, 101 S. Ct. at 1884B85; see Solem v. Stumes, 465
U.S. 638, 641, 104 S. Ct. 1338, 1340 (1984) (characterizing Edwards as
establishing a bright-line rule and reaffirming that once a suspect has invoked
the right to counsel, any subsequent interrogation must be initiated by
him).  





[41]See Maryland v. Shatzer, 130 S. Ct. 1213, 1221B22 (2010) (reaffirming Edwards=s Aconclusive presumption@ of invalidity of waiver
of Fifth Amendment right to counsel but holding presumption did not continue
following break in custody of more than fourteen days after return of accused
to general prison population); Edwards, 451 U.S. at 484B85, 101 S. Ct. at 1884B85 (waiver presumed
involuntary if counsel not present unless accused, himself, reinitiates
communication).   





[42]Davis, 512 U.S. at 458, 114 S.
Ct. at 2355 (citing Michigan v. Harvey, 494 U.S. 344, 350, 110 S. Ct.
1176, 1180 (1990)).  





[43]498 U.S.
at 156, 111 S. Ct. at 492.  





[44]462 U.S. 1039, 1044B46, 103 S. Ct. 2830, 2834B35 (1983); see Cross v.
State, 144 S.W.3d 521, 526B27 (Tex. Crim. App. 2004).





[45]Cross, 144 S.W.3d
at 527 (citing and following Bradshaw, 462 U.S. 1044B46, 103 S. Ct. at 2834B35).  





[46]Id.





[47]475 U.S.
at 636, 106 S. Ct. at 1411.  





[48]Id. at 635B36, 106 S. Ct. at 1410B11.  





[49]Davis, 512 U.S. at 456B57, 114 S. Ct. at 2355B56; Miranda, 384
U.S. at 473B74, 86 S. Ct. at 1627.





[50]Davis,
512 U.S.
at 456B57, 114 S. Ct. at 2355B56.





[51]Jackson, 475 U.S. at 626B28, 106 S. Ct. at 1406B07.





[52]See Montejo, 129 S. Ct. at 2082.





[53]id.





[54]Id. at 2083B84.





[55]See id. at
2083.





[56]Id. at 2084.





[57]Id.





[58]Id. at 2082. 





[59]Id. at 2091.





[60]Id. 





[61]See 297 S.W.3d at 330. 





[62]Id. at 334B35.





[63]Id. at 331.





[64]Id.





[65]Id. at 331B32.





[66]Id.





[67]Id. at 332.





[68]Id.





[69]Id.





[70]Id.





[71]Id. at 335.





[72]Jackson,
475 U.S.
at 636, 106 S. Ct. at 1411. 





[73]See Pecina
I, 2007 WL 1299263, at *7.  





[74]See
Patterson v. Illinois, 487 U.S. 285, 292 n.4, 108 S. Ct. 2389,
2393 n.4 (1988); Brewer, 430 U.S. at 404, 97
S. Ct. at 1236 (same); Johnson, 304 U.S. at 464, 58 S. Ct. at 1022
(same).






[75]Montejo, 129 S. Ct. at 208 (citing
Harvey, 494 U.S. at 352B53, 110 S. Ct. at 1180). 





[76]Id., 129 S. Ct. at 2085; see
also Patterson, 487 U.S. at 296, 108 S. Ct. at 2397 (AAs a general matter . . . an accused who is admonished with the
warnings prescribed . . . in Miranda . . . has been
sufficiently apprised of the nature of his Sixth Amendment rights, and of the
consequences of abandoning those rights, so that his waiver on this basis will
be considered a knowing and intelligent one.@). 





[77]Patterson, 487 U.S. at 292,
108 S. Ct. at 2394 (finding Aknowing and intelligent@ and voluntary waiver of
defendant=s Sixth Amendment right to
counsel at post-indictment questioning valid where defendant was given his Miranda
warnings and informed of the benefits of what counsel could do for him and the
consequences of a decision to waive his rights, without claiming his right to
silence or to counsel, and executed a written waiver).  





[78]Montejo, 129 S. Ct. at 2090.  





[79]Id. (emphasis added) (citing Texas
v. Cobb, 532 U.S. 162, 175, 121 S. Ct. 1335, 1344 (2001) (Kennedy, J.,
concurring)).





[80]Id.





[81]Id.





[82]Id.





[83]297 S.W.3d
at 335 (citing Minnick, 498 U.S. at 153, 111 S. Ct. at 491 and Edwards,
451 U.S. at 484B85, 101 S. Ct. at 1885).





[84]Id. at 334 n.3.





[85]Pecina II, 268 S.W.3d at 568.





[86]Id. 





[87]Id. 





[88]AThe >law of the case= doctrine is as applicable
to the appeals of criminal cases as it is to appeals of civil cases.@  Ware v. State, 736 S.W.2d
700, 701 (Tex. Crim. App. 1987).  AThe legal principle or
doctrine of >the law of the case= in its most basic form
provides that an appellate court=s resolution of a question of law in a previous
appeal of the same case will govern the disposition of the same issue should
there be another appeal.@  Id.





[89]See Carroll, 101 S.W.3d
at 460 (AIf the court of appeals
has authority to decide a particular point of error on a different, but
appropriate, legal basis despite a narrow remand order, a fortiori, it
should not be precluded from reconsidering the original legal basis for its
decision.@); Williams, 145 S.W.3d at 740 (re-examining issue not addressed by court of
criminal appeals on remand for harm analysis as to different issue).  





[90]129 S.
Ct. at 2090. 





[91]McCarthy v. State, 65 S.W.3d
47, 51 (Tex. Crim. App. 2001) (emphasis added) (citing Edwards, 451 U.S.
at 484B85, 101 S. Ct. at 1880;
Miranda, 384 U.S. at 474, 86 S. Ct. at 1602; Dinkins v. State, 894 S.W.2d 330, 350B51 (Tex. Crim. App. 1995)).  





[92]Id. at 52.





[93]Id.





[94]Tex.
Code Crim. Proc. art. 15.17(a); see Hughen, 297 S.W.3d at 331 (noting defendant received article 15.17
warnings consistent with Miranda). 
The dissent=s argument would turn the
intent of the legislature in requiring an article 15.17 hearingCto protect an accused=s Miranda rightsC upside down, making it
impossible for a suspect to invoke those very rights of which he has just been
advised.  See Tex.
Code Crim. Proc. art. 38.22(2) and (3) (Vernon 2002); Oursbourn v. State, 259 S.W.3d
159, 171B72 (Tex. Crim. App. 2008)
(custodial interrogation statement not admissible unless, prior to making  statement, accused received warnings provided
in article 15.17 as required by article 38.22, sec. 2(a) or 3(a) (incorporating
the requirements of Miranda)); Garcia v. State, 919 S.W.2d 370, 406B07 (Tex. Crim. App. 1994) (tracing history of amendments
in response to Miranda to section 2 of article 38.22, which requires the
article 15.17 warnings to be given by a magistrate or the person taking a
statement for it to be admissible in evidence).





[95]Higginbotham v. State, 769 S.W.2d
265, 269 (Tex. App.CHouston [14th Dist.] 1989)
(emphasis added), rev=d on other grounds, 807 S.W.2d
732 (Tex. Crim. App. 1991) (holding defendant invoked his Fifth Amendment right
to counsel when he said, AI would like an attorney
but I cannot afford one@ in magistrate=s article 15.17 hearing
held after he was taken into custody; magistrate told him he would get an
attorney in twenty-four hours; but officers violated defendant=s Fifth Amendment right by
then taking defendant back to interview room and proceeding to interrogate him
after asking him if he still wanted to talk to them).





[96]See 129 S. Ct. at 2082B92.





[97]Id. at 2082, 2086B87.





[98]Id. at 2085B91.





[99]Id. at 2085B86.





[100]Id. at 2090.





[101]Nor did Pecina invoke his Fifth Amendment right to counsel Aanticipatorily,@ as the dissent asserts,
using a term referenced in dictum by the majority opinion in Montejo.  See
Montejo, 129 S. Ct. at 2091; see
also McNeil v. Wisconsin, 501 U.S. 171, 182 n.3,
111 S. Ct. 2204, 2211 n.3 (1991) (stating Awe have in fact never held
that a person can invoke his Miranda rights anticipatorily@).  Pecina asked for
appointed counsel in response to being advised that he was entitled to counsel
during any questioning and while the police waited to do just that. His request
was precisely for the sort of assistance of counsel that is the subject of Miranda.  See Montejo, 129
S. Ct. at 2091 (stating Awhat matters for Miranda
and Edwards is what happens when the defendant is approached for
interrogation@ (emphasis added));
Miranda, 384 U.S. at 470, 86 S. Ct. at 1626 (stating Aa pre-interrogation
request for a lawyer . . . affirmatively secures [the] right to have
[counsel]@ (emphasis added)).





[102]Pecina II, 268 S.W.3d
at 568 n.1.





[103]Nor does Pecina=s response that he still wanted to talk to the
detectives after requesting counsel create an ambiguity in Pecina=s invocation of
counsel.  There is nothing inconsistent
about requesting counsel and agreeing to talk to the authorities once counsel
has been appointed. Moreover, an accused=s expression of willingness to talk to police may
not be used to create doubt retrospectively as to his initial request for
counsel.  Smith v. Illinois, 469
U.S. 91, 93, 96B97, 105 S. Ct. 490, 492B93 (1984) (an accused=s post-request responses
to further interrogation may not be used retrospectively to cast doubt on his
initial request for counsel); see State v. Martinez, No. 08-08-00098-CR,
2010 WL 705930, at *8 (Tex. App.CEl Paso, Mar. 2, 2010, no pet. h.) (not designated
for publication) (holding agreement to make recorded
statement, when accused had not initiated the continued discussion, did not
undermine his previous invocation of right to counsel).   





[104]To a suspect who has
requested counsel in the context of the pressures of custodial interrogation,
further examination Awill surely exacerbate
whatever compulsion to speak the suspect may have been feeling;A @fresh sets@ of Miranda warnings
given over and over when counsel has not been provided  do nothing to reassure a suspect who
continues to be denied the counsel he clearly requested.  Arizona v. Roberson, 486
U.S. 675, 686, 108 S. Ct. 2093, 2100 (1988).





[105]451 U.S.
at 484B85, 101 S. Ct. at 1884B85.





[106]Tex. R. App. P. 44.2(a);
see Jones v. State, 119 S.W.3d 766, 777
(Tex. Crim. App. 2003); McCarthy, 65 S.W.3d at
55.





[107]Tex. R. App. P. 44.2(a); McCarthy,
65 S.W.3d at 55.





[108]Jones, 119 S.W.3d
at 777 (citing McCarthy, 65 S.W.3d at 55). 





[109]McCarthy, 65 S.W.3d at 55.





[110]Id. (citing Satterwhite v. Texas, 486 U.S. 249, 258B59, 108 S. Ct. 1792, 1798
(1988)).  





[111]Id. 





[112]Id. (citing Arizona v. Fulminante, 499 U.S. 279, 296, 111 S. Ct. 1246, 1257
(1991)).  





[113]Fulminante, 499 U.S. at 296, 111 S.
Ct. at 1257 (quoting Bruton v. United
States, 391 U.S. 123, 139B40, 88 S. Ct. 1620, 1630 (1968) (White, J.,
dissenting)).





[114]Id. at 313, 111 S. Ct. at
1266 (Kennedy, J., concurring).





[115]Harris
v. State,
790 S.W.2d 568, 587 (Tex. Crim. App. 1989). 















 [CB1]Opinion
on Remand; Majority by Gardner; Holman dissents