

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD–1159–07

**ALFREDO LEYVA PECINA, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SECOND COURT OF APPEALS
## TARRANT COUNTY

MEYERS, J., delivered the opinion of the Court, in which PRICE,
WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.
KELLER, P.J., filed a dissenting opinion.

## O P I N I O N

Appellant, Alfredo Leyva Pecina, was found guilty of murder and sentenced to life

in prison.  He appealed his conviction, arguing that the trial court erred in denying his

motion to suppress his statements to the police.  The court of appeals affirmed the trial

court.  *Pecina v. State*, No. 2-05-456-CR (Tex. App.–Fort Worth May 3, 2007) (not

designated for publication), 2007 Tex. App. LEXIS 3424.  We granted review to consider

whether an attorney should have been provided for Appellant before he was questioned by the police, and whether Appellant waived his Fifth and Sixth Amendment rights. We hold that Appellant's rights to counsel had attached when he was arraigned, and that he did not initiate the contact with the police as required to validly waive those rights. Therefore, he should not have been questioned without an attorney present. We will reverse the court of appeals.

## FACTS

Appellant and his wife, Michelle, lived with her father and her sister, Gabriela. One evening, Gabriela came home and found Appellant and Michelle lying on the floor of their bedroom, bleeding from stab wounds. When she picked up the phone to call 911, Appellant stood up and came toward her. She left the apartment and went to get a neighbor. The neighbor called 911 and then went with Gabriela back to the apartment. When police and paramedics arrived, they found Appellant on the floor suffering from stab wounds and took him to the hospital. Michelle was pronounced dead at the scene, and it was later determined that she had been stabbed more than fifty times.

Because the police believed that Appellant had murdered his wife and had attempted to kill himself, detectives prepared a warrant for his arrest. The detectives brought a Spanish-speaking magistrate, Judge Maddock, to the hospital to arraign Appellant before the detectives attempted to interview him. The magistrate testified that she and the detectives entered Appellant's hospital room and introduced themselves. She

went over to Appellant's bedside and pointed to the detectives and said, "They are here. They want to speak to you." She stated, "[H]e nodded his head or said 'yes.' I can't remember, but there was an acknowledgment." She then read him his rights and asked him if he wanted a court-appointed attorney. He said that he did. The magistrate wrote on the bottom of the waiver of counsel form, "Per court motion, appoint defendant an attorney." She asked him if he wanted to speak to the detectives, and he said, "Yes." She said that he did not indicate that he wanted counsel present before he talked to the detectives.

Before speaking with detectives, Appellant also signed the "Adult Warning Form," which says that you have the right to counsel, the right to remain silent, you do not have to speak to the police, you are not required to make a statement, and you have the right to stop any interview or questioning at any time. One of the detectives wrote in Spanish on the side of the waiver of counsel form Appellant had already signed, "I asked for a lawyer, but I also wanted to speak with the Arlington police." The officers read Appellant the *Miranda* warnings twice, once before they started recording the interview and again after turning on the recording device. *See Miranda v. Arizona,* 384 U.S. 436 (1966).

During the interview with the police, Appellant said that he and his wife had argued. When asked if he had cut his wife, he said, "yes." He then signed a confession written by one of the detectives stating that he had cut his wife.

Appellant filed a motion to suppress both his oral and written statements, claiming that the statements were not voluntarily given and were obtained in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. At the suppression hearing, the State asked the magistrate whether Appellant freely, intelligently, knowingly and voluntarily spoke to the police officers. She testified, "He said he still – I said, I asked them – him, 'do you still want to talk to them?' And he said, 'Yes.' He never said to me that he wanted to talk to them."

The trial court denied the motion to suppress and made findings of fact and conclusions of law including that Appellant was fully informed of his rights and that Appellant "indicated that although he did want a lawyer, that he wished to also talk with detectives from Arlington, meaning that he basically was waiving his rights at that time . . ." The trial court found that Appellant also signed various waivers of counsel and was not under the influence of drugs or alcohol when he gave a statement that was recorded and put in writing. Based on these findings, the trial court ruled that the statement was taken voluntarily and was admissible.

The jury found Appellant guilty of murder and sentenced him to life in prison. Appellant appealed, raising several issues, including that his statement to police was obtained in violation of his right to counsel.

## COURT OF APPEALS

The court of appeals addressed Appellant's issues related to the right to counsel

under the Fifth and Sixth Amendment and held that the trial court did not err in finding that Appellant voluntarily waived his rights. The court reasoned that Appellant waived his Fifth Amendment right to counsel "either by failing to invoke it, because nothing in the testimony at the hearings or at trial clearly showed that Appellant indicated to Judge Maddock or the detectives at the time of the interview that he wanted to speak to an attorney about the questioning or to have one present during questioning, or because he reinitiated the contact by answering 'yes' when asked by the magistrate if he still wanted to speak with the detectives and by telling the detectives that he wanted to speak to them." *Pecina,* 2007 Tex. App. LEXIS 3424 at *21-22.

Considering the Sixth Amendment, the court concluded that Appellant's right to counsel had attached when he was arraigned by the magistrate and requested a court-appointed attorney. *Id.* at *23-24. The court determined that Appellant invoked his right to counsel and then reinitiated contact with the detectives when he said, "I asked for a lawyer, but also I wanted to speak with the Arlington police." He also waived his right to counsel when he was advised of his *Miranda* rights by the detectives prior to the interview. *Id.* at *25-27, *citing Cross v. State*, 144 S.W.3d 521 (Tex. Crim. App. 2004) (stating that a suspect has waived his previously invoked right to counsel if the suspect himself reinitiated the communication with the police and thereafter expressly waived the right to counsel). The court of appeals deferred to the trial court's findings of fact and rejected Appellant's arguments that his Fifth and Sixth Amendment rights were violated.

Appellant filed a petition for discretionary review asking us to consider the following two grounds for review:

When a defendant who had been given Miranda rights by a magistrate simultaneously requests a lawyer and requests to speak to the police, must an attorney be provided before the police can begin their interrogation?

When the police enter a hospital room to take a statement from defendant in custody after the police have been informed that the accused has requested an attorney and simultaneously indicated a willingness to speak to the police, has the accused 'reinitiated' contact with the police and voluntarily waived his fifth and sixth amendment rights to counsel and rights against self incrimination?

## CASELAW

In *Edwards v. Arizona*, 451 U.S. 477 (1980), the Supreme Court held that,

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id*. at 484-85.

The Court then extended *Edwards* to the Sixth Amendment in *Michigan v. Jackson*, 475 U.S. 625 (1985). As in the case before us, in the two cases that were consolidated and discussed in *Jackson*, the appellants requested appointment of counsel at the arraignment. And, in each case, the investigating officers were present at the arraignment and questioned the accused after counsel was requested, but before the

appellants had spoken with counsel. Each appellant was advised of his *Miranda* rights prior to questioning and agreed to proceed with the interview without counsel. The Court concluded that when a defendant requested counsel at an arraignment proceeding, the police could not then initiate contact with the defendant and request a waiver of those rights for the purpose of interrogation. *Id*. at 636.

We considered *Edwards* in *Cross v. State* and held that if an appellant has invoked his right to counsel but then initiates contact with the police and expressly waives the right to counsel, then the *Edwards* rule is satisfied and "the suspect has countermanded his original election to speak to authorities only with the assistance of counsel." 144 S.W.3d at 527 (citing *Oregon v. Bradshaw*, 462 U.S. 1093 (1983)).

## ANALYSIS

Despite the fact that the grounds for review characterize the requests for a lawyer and to speak to the police as simultaneous, as noted above, the record indicates that the magistrate read Appellant his rights and asked if he wanted a court-appointed attorney. When he said that he did, she filled out the paperwork to begin the appointment process. She then asked Appellant if he wanted to speak to the detectives, who were waiting in his hospital room.

The State argues that Appellant failed to invoke his Fifth Amendment right to counsel during interrogation; that his Sixth Amendment rights were not triggered by the reading of the statutory warnings; and, even if Appellant invoked his Sixth Amendment

rights, he waived them.

Because Appellant did not unambiguously request that an attorney be provided for the interrogation, the State asserts that the request for appointment of counsel was in the event of a future trial, and not for the purpose of assisting him during questioning by the detectives who were waiting to speak to him. The Supreme Court addressed and rejected this argument in *Michigan v. Jackson*, stating that "We thus reject the State's suggestion that respondents' requests for the appointment of counsel should be construed to apply only to representation in formal legal proceedings." 475 U.S. at 633. This also directly addresses the State's second argument, that adverse judicial proceedings are not initiated by an arrest or by the magistrate reading Appellant his rights under Texas Code of Criminal Procedure Article 15.17. *See id.* at 636 (once the Sixth Amendment attached in dealings with magistrate, police could talk to a defendant only if he himself initiated the contact.) Recently, the Supreme Court specifically considered Sixth Amendment rights in relation to Texas Code of Criminal Procedure Article 15.17 and held that a defendant's initial appearance before a magistrate judge, where he learns the charge against him and his liberty is subject to restriction, marks the initiation of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel. *Rothgery v. Gillespie County*, 128 S.Ct. 2578, 2592 (2008). Because Appellant in this case had invoked his rights to counsel when arraigned by the magistrate at the hospital, the remaining issue is whether Appellant initiated the contact with the police and then validly waived his

previously invoked rights. *See Cross,* 144 S.W. 3d at 528.

The record indicates that Appellant did not himself initiate contact with the detectives. The detectives came to the hospital with a warrant for Appellant's arrest and brought a magistrate with them for the purpose of arraigning Appellant. The magistrate informed Appellant of his rights and began the process of appointing an attorney for him. Only after she asked him if he wanted to speak to detectives did he reply, "Yes." In no way does this indicate that Appellant himself initiated contact or opened the dialog with the authorities. The magistrate testified that Appellant agreed to speak with the detectives only after she asked him if he wanted to, stating, "He never said to me that he wanted to talk to them." Therefore, there was no initiation of contact with the police by Appellant. Just as in *Edwards*, the State showed only that Appellant responded to further police-initiated questioning.[1]

As the Supreme Court stated in *Jackson*, "We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson*, 475 U.S. at 636.

**CONCLUSION**

While we agree with the court of appeals that Appellant's Sixth Amendment right

---

[1]We acknowledge that it was the magistrate, not the detectives who actually initiated the contact between Appellant and the police. However, as the Supreme Court noted in *Jackson*, "Sixth Amendment principles require that we impute the State's knowledge from one state actor to another." *Jackson*, 475 U.S. at 634.

to counsel attached when he was arraigned by the magistrate, we disagree that Appellant himself initiated contact with the police. Saying "yes" when asked by the magistrate if he wanted a court appointed attorney is enough to invoke the Sixth Amendment right to counsel; however, answering "yes" when asked if he wanted to speak to detectives does not indicate that Appellant *initiated* the contact as required under the *Edwards* bright-line rule. The court of appeals erred in holding that Appellant initiated contact with the police and waived his previously invoked rights to counsel. The judgment of the court of appeals is reversed and the case is remanded for a harm analysis.

Meyers, J.

Delivered: October 29, 2008

Publish