

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-437-CR

RANCE DUANE SHELTON                                                APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]
## ON STATE'S PETITION FOR DISCRETIONARY REVIEW

------------

After reviewing the State's petition for discretionary review, we modify

our opinion and judgment in this appeal. *See* Tex. R. App. P. 50. We withdraw

our December 18, 2008 opinion and judgment and substitute the following.

### I. INTRODUCTION

Appellant Rance Duane Shelton appeals his conviction for possession of

---

[1] *See* Tex. R. App. P. 47.4.

a controlled substance, over one gram. In a single point, Shelton claims the trial court erred by denying his motion to suppress. We will reverse.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Troopers Kristopher Hall and Shane Neal pulled over Shelton because his car did not have a front license plate. The stop was videotaped by a camera in the officers' vehicle and introduced in evidence at the hearing on Shelton's motion to suppress.

At the suppression hearing, Trooper Hall testified that Shelton appeared excessively nervous throughout the stop. When he asked if Shelton had insurance, he said "they" did but did not give any proof of insurance to the officer or look for any inside the vehicle. Shelton initially said the car belonged to his wife, but later said that it belonged to Tom McClendon. The officer testified that after he gave Shelton a citation and returned his driver's license, he asked Shelton "if he would mind if I made sure there wasn't anything illegal in the vehicle." Shelton "didn't say, 'Yes,' he didn't say 'No," but responded that he did not want to be harassed. The officer testified that after explaining to Shelton that he was not harassing him and why he was suspicious, "[i]t didn't seem like I was going to get an answer one way or the other, so rather than continue in the course and re-explain everything a third time as to why I was suspicious, I removed the hand-held radio from my side, began to contact

2

Hood County."  He was about to request a K-9 unit but before he could do so, Shelton said, "Go ahead and look."  Trooper Hall testified that Shelton did not limit the scope of his consent to search.

Shelton also testified at the suppression hearing.  He said that he never voluntarily agreed to let Trooper Hall search his car.  Shelton testified, "Actually what I — I thought I said was, 'Okay, I'll open the trunk' is what I heard myself say."

The videotape of the stop, which was played for the court at the suppression hearing, shows that the second time Trooper Hall asked if there was anything illegal in the car, Shelton said he would open the glove box if he wanted him to.  Trooper Hall said, "Well hang on" and asked if it was alright if he made sure there was nothing illegal in the car.  Shelton responded, "No sir, I don't have any drugs in the car.  I'll show you."  The officer explained that it would be safer if he looked for himself and asked if there was something Shelton did not want him to see.  Shelton answered that there was not but that he did not like to be searched and that he did not want to be harassed.  A review of the videotape shows that as Trooper Hall took out his handheld radio to call dispatch, Shelton said, "Go ahead.  Look.  I'll open up the trunk."  They were standing in front of the trunk of Shelton's car.  The officer stepped backwards away from the trunk, and Shelton said, "I was going to open up the

3

trunk." Trooper Hall asked Shelton if his partner could "pat [him] down real quick," and he walked to the driver's side of the car as Trooper Neal patted down Shelton. A search of the glove box of the car revealed methamphetamine.

### III. MOTION TO SUPPRESS

In his sole point, Shelton argues that the trial court erred by denying his motion to suppress because the evidence was not clear and convincing that he gave positive and unequivocal consent to search the glove box of the car. Shelton contends that he purported to limit the scope of his consent to only the trunk of the car and that, consequently, the officers exceeded the scope of his consent.

### A. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214

4

S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the

5

evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 819; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

## B. SCOPE OF CONSENT

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973)). To be valid, a consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), *cert. denied*, 510 U.S. 831, 114 S. Ct. 101 (1993). The trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether consent was given voluntarily. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The federal constitution requires the State to prove voluntary consent by a preponderance of the evidence, but the Texas constitution requires proof by clear and convincing evidence. *Carmouche*, 10 S.W.3d at 331.

6

Even when an individual voluntarily consents to a search, an officer's authority to perform the search is not without limit. *May v. State*, 582 S.W.2d 848, 851 (Tex. Crim. App. [Panel Op.] 1979). The extent of the search is limited to the scope of the consent given. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04 (1991); *May*, 582 S.W.2d at 851. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, i.e., what the typical reasonable person would have understood from the exchange between the officer and the suspect. *Jimeno*, 500 U.S. at 251, 111 S. Ct. at 1803–04; *Simpson v. State*, 29 S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer. *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir.), *cert. denied*, 538 U.S. 1049, 123 S. Ct. 2114 (2003) (citing Wayne R. LaFave, Search and Seizure § 8.1(c) (3d ed. 1996 & Supp. 2003)).

"If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way." *Id.* at 670 (quoting *United States v. Snow*, 44 F.3d 133, 134–35 (2d Cir. 1995)). When an officer specifically asks a suspect if he can search a vehicle for illegal contraband, and the suspect answers affirmatively, a reasonable

7

person would construe the consent to extend to any area of the vehicle in which such objects could be concealed. *Simpson*, 29 S.W.3d at 330. If an officer makes a general request to search and the individual consents, knowing that there are unlocked containers in the car, the individual should expressly limit her consent to the vehicle but not the containers or, at the very least, object when the officer begins to open the container. *Mendoza-Gonzalez*, 318 F.3d at 667. The State has the burden of showing that the search was conducted within the scope of the consent received. *Malone v. State*, 163 S.W.3d 785, 798 n.6 (Tex. App.—Texarkana 2005, pet. ref'd).

In this case, we have reviewed the videotape of the stop multiple times. It reveals that Shelton did not immediately answer Trooper Hall's requests to search his car and that eventually, and not directly in response to a question, Shelton said, "Go ahead. Look. I'll open up the trunk." Certainly if Shelton had stopped with "Go ahead. Look," his consent would have extended to the glove box of the car. *See, e.g., United States v. McSween*, 53 F.3d 684, 688 (5th Cir.), *cert. denied*, 516 U.S. 874, 116 S. Ct. 199 (1995) (holding that consent to "look in" a car included area under hood); *Cannon v. State*, 29 F.3d 472, 477 (2d Cir. 1994) (noting, in holding that defendant's answer to "go ahead" and look in car justified search of trunk, that failure to object to continued search of vehicle after giving general consent to search is an indication that

8

search was within scope of initial consent); *Caraway v. State*, 255 S.W.3d 302, 310 (Tex. App.—Eastland 2008, no pet.) (holding scope of search extended to back trunk area of vehicle when defendant consented to a "look" inside his car). But the videotape shows that Shelton did not leave his consent open-ended. As he and Trooper Hall stood at the end of the vehicle near the trunk, Shelton continued and said, "I'll open up the trunk," and further explained as Trooper Hall walked away from the trunk of the vehicle, "I was going to open up the trunk." Contrary to the videotape, Trooper Hall testified that Shelton's response was only, "Go ahead. Look," and that Shelton did not limit his consent.

The State was required to prove by clear and convincing evidence that Shelton's consent to a search of the interior of the vehicle was both positive and unequivocal; in other words, that Shelton left no doubt that he had consented to the search and that his words expressing his consent were, viewing the totality of the circumstances, capable of only one reasonable interpretation. *See Reasor*, 12 S.W.3d at 818; *Allridge*, 850 S.W.2d at 493; *see also Webster's Third New International Dictionary* 2494 (2002) (defining the term "unequivocal"). But a reasonable person standing at the rear of Shelton's vehicle near the trunk could have interpreted Shelton's statements that he would open up the trunk and that he was going to open up the trunk as

9

a limitation to his consent to search, authorizing a search only of the trunk. *See Thomas v. State*, No. 14-99-00949-CR, 2000 WL 1785110, at *4 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (not designated for publication) (holding that appellant's statement to "[j]ust go" in response to officer's consent to search was equivocal in that a rational person might interpret it as permission to "go ahead and search" or that she wanted the police out of her home); *see also Reyes-Perez v. State*, 45 S.W.3d 312, 319 (Tex. App.—Corpus Christi 2001, pet. ref'd) (holding that officers' testimony that they communicated with appellant solely by "hand gestures" was insufficient to constitute clear and convincing evidence of appellant's positive and unequivocal consent to the search). *Contra Mendoza-Gonzalez*, 318 F.3d at 667 (in upholding search, noting that defendant's decision not to place any limitations in his response to officers' general request is evidence of general consent to search).

We apply a deferential standard of review to the trial court's determination of historical facts, even when that determination is based on a videotape. *See Montanez*, 195 S.W.3d at 109. But this standard does not require that we disregard the videotape entirely when it does not support the trial court's ruling; the trial court could not find facts that the record would not support. *See id.* ("The issue is whether, after affording almost total deference

10

to the trial court's determination of historical facts *that are supported by the record*, the trial court abused its discretion by finding that the State proved by clear and convincing evidence that Montanez voluntarily consented to the search of the vehicle.") (emphasis added).  And this standard does not require that we defer to the trial court's misapplication of the law to the facts; a trial court does not have discretion to misapply the law.  *See Fink v. State*, No. 06-99-00149-CR, 2000 WL 1059492, at *3 (Tex. App.—Texarkana Aug. 3, 2000, pet. ref'd) (not designated for publication).

Even after affording almost total deference to the trial court's determination of historical facts that are supported by the record, we cannot hold that the trial court acted within its discretion by finding that the State proved by clear and convincing evidence that Shelton positively and unequivocally consented to more than a search of his trunk.  *See Montanez*, 195 S.W.3d at 108; *Allridge*, 850 S.W.2d at 493.  The State proffered no theory, other than Shelton's consent, justifying the warrantless search of the interior of Shelton's vehicle.  Consequently, we hold that the trial court abused its discretion by denying Shelton's motion to suppress.

## C.  HARM

Having found an abuse of discretion, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  Tex. R. App.

11

P. 44.2. Because the error involved is of constitutional magnitude, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to Shelton's conviction or punishment. Tex. R. App. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). The question is whether the trial court's error in denying Shelton's motion to suppress was harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

The only evidence that Shelton possessed methamphetamine came from the search of the interior of Shelton's vehicle, specifically Shelton's glove box. We are thus unable to determine beyond a reasonable doubt that the trial court's error in denying Shelton's motion to suppress did not contribute to Shelton's conviction or punishment for possession of more than one gram of methamphetamine. *See Williams*, 958 S.W.2d at 195. We sustain Shelton's sole point.

**IV. CONCLUSION**

12

Having sustained Shelton's sole point, we reverse the trial court's order denying his motion to suppress and remand to the trial court for further proceedings consistent with this opinion.

                                                        SUE WALKER
                                                        JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DAUPHINOT, J. filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 5, 2009



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-437-CR

RANCE DUANE SHELTON                                                                APPELLANT

V.

THE STATE OF TEXAS                                                                           STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## CONCURRING MEMORANDUM OPINION[1] ON STATE'S PETITION FOR DISCRETIONARY REVIEW

------------

I write separately only to emphasize my agreement with the majority opinion. At least since *Bumper v. North Carolina*, we have been reminded of that which is a cornerstone of the constitutional protections guaranteed by the Bill of Rights: coerced consent is no consent at all.[2] The warrantless search resulting from coerced consent is, therefore, unreasonable.

---

[1] *See* Tex. R. App. P. 47.4.

[2] 391 U.S. 543, 548–49, 88 S. Ct. 1788, 1791–92 (1968).

When the validity of a search rests upon consent, the State bears the burden of proving that the consent was obtained and that it was freely and voluntarily given.[3] That burden is not satisfied by showing a mere submission to a claim of lawful authority.[4] As the Texas Court of Criminal Appeals explained in the Sixth Amendment context, courts indulge every reasonable presumption against waiver of a fundamental constitutional right.[5]

In the case now before this court, Appellant refused to consent to the officer's request to search his car. The officer clearly understood that Appellant was refusing to consent because he repeatedly asked why Appellant would not let him search the car. Then the other officer came up and stood beside the first officer, both much bigger than Appellant, and, standing together, they created an imposing force. The officer continued to demand consent to search the car, explaining that a person with nothing to hide would permit the search.

---

[3] *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007).

[4] *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324 (1983) (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329, 99 S. Ct. 2319, 2326 (1979); *Schneckloth v. Bustamonte*, 412 U.S. 218, 233–34, 93 S. Ct. 2041, 2050–51 (1973); *Bumper*, 391 U.S. at 548–49, 88 S. Ct. at 1791–92; *Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 368 (1948); *Amos v. United States*, 255 U.S. 313, 317, 41 S. Ct. 266, 268 (1921)).

[5] *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S. Ct. 1019, 1023 (1938)).

When a defendant invokes his Fifth Amendment rights, the matter is settled, and only the defendant may initiate a waiver of those rights.[6] The same is true when a defendant invokes his Sixth Amendment rights.[7] Here, Appellant invoked his Fourth Amendment right to be secure in his person, papers, and effects.[8] Yet the officers continued to press and to demand that he give up that right and consent to an unlimited search of his car and everything within it. They finally overbore his will, and he gave in, but only to the extent that he said they could search the trunk. In *Bumper*, the consent was held to be involuntary because the officers claimed that they could get a warrant.[9] Here, Appellant finally gave in to two officers who refused to accept his invocation of his Fourth Amendment rights. By no stretch of the imagination could his consent be construed as voluntary and uncoerced. I therefore wholeheartedly join the majority's decision.

LEE ANN DAUPHINOT
JUSTICE

---

[6] *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1884–85 (1980); *Pecina v. State*, 268 S.W.3d 564, 567–69 (Tex. Crim. App. 2008).

[7] *Michigan v. Jackson*, 475 U.S. 625, 634–36, 106 S. Ct. 1404, 1410–11 (1985); *Pecina*, 268 S.W.3d at 567–69.

[8] *See* U.S. Const. amend. IV.

[9] *Bumper*, 391 U.S. at 548–50, 88 S. Ct. at 1791–92.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 5, 2009

4