IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1095-10






ALFREDO LEYVA PECINA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Cochran, J., delivered the opinion of the Court in which Keller, P.J., and
Meyers, Womack, Johnson, Keasler, Hervey and Alcala, JJ., joined. Alcala,
J., filed a concurring opinion in which Johnson, J., joined. Price, J., filed a
dissenting opinion.



 A Tarrant County jury convicted appellant of the murder of his wife. The trial judge
denied appellant's motion to suppress his statements to police during custodial questioning
at a hospital after a magistrate had given him his Article 15.17 rights. (1) The trial judge
rejected appellant's claim that he had invoked both his Fifth and Sixth Amendment rights to
counsel when he asked the magistrate for an appointed attorney but also said that he wanted
to talk to the police who were standing outside the hospital room. On remand from this
Court, the court of appeals, over a dissent, held that appellant had invoked his Fifth
Amendment right to interrogation counsel during the magistration process. (2) 

 We granted the State's petition for discretionary review to clarify the distinction after
Montejo between the Fifth Amendment right to interrogation counsel and the Sixth
Amendment right to trial counsel. (3) Under Montejo, the Fifth Amendment right to
interrogation counsel is triggered by the Miranda warnings that police must give before
beginning any custodial questioning. The Sixth Amendment right to trial counsel is triggered
by judicial arraignment or Article 15.17 magistration. Both the Fifth and Sixth Amendment
rights to counsel apply to post-magistration custodial interrogation, but each is invoked and
waived in exactly the same manner-under the Fifth Amendment prophylactic Miranda rules. 
We hold that, because appellant never invoked his right to interrogation counsel after the
police gave him Miranda warnings, the trial judge did not err in denying appellant's motion
to suppress. 

I. 

A. Factual Background.

 Arlington paramedics responded to a 911 call and found appellant and his wife,
Michelle, in their apartment, both bleeding from stab wounds. Michelle, who had been
stabbed fifty-five times, died before the paramedics arrived. Appellant was taken to the
hospital. A serrated kitchen knife with a seven-inch blade was found on the bathroom floor. 
Based on their initial investigation, detectives believed that appellant had killed Michelle and
then stabbed himself. After several days, they obtained an arrest warrant. Then Detectives
Nutt and Frias took Judge Maddock, a local magistrate, to appellant's hospital room. 

 Judge Maddock testified at the suppression hearing that she normally performs 
magistration hearings at the Arlington City Jail, but she went to the hospital for appellant's
hearing, as she had done in some other cases, "due to the policy of the sheriff's office [that
it will not] transfer . . . a Defendant until he has been fully magistrated." The two detectives
drove Judge Maddock to the hospital and entered appellant's room with her. They all
introduced themselves. Judge Maddock, who was fluent in Spanish, told appellant, while
pointing to the detectives, "They are here. They would like to speak to you." Appellant either
said yes or nodded. 

 The detectives then left the room and stood outside while Judge Maddock arraigned
appellant. She read appellant a Spanish version of the Article 15.17 "Adult Warning Form,"
although she had only an English version for him to sign. (4) After reading appellant his rights,
Judge Maddock asked if he "want[ed] a court appointed attorney. And he stated he did." She
then asked appellant, "Do you still want to talk to [the detectives]?" He said that he did. 
Appellant signed the Article 15.17 form acknowledging that he understood his rights. 

 Judge Maddock stated that, in her opinion, appellant's decision to speak with the
detectives was free and voluntary and there was "absolutely no coercion." She believed that,
when appellant asked for counsel, he was asking for trial counsel. She said that appellant
never indicated that he wanted a lawyer to be present when detectives questioned him. Judge
Maddock then went into the hall and told the detectives that appellant "had initially asked for
a lawyer, but [that] she had been told by Mr. Pecina that he wanted to talk to them." She
gave the signed Article 15.17 form to the detectives, and she waited in the hallway. 

 Detectives Frias and Nutt then came back into appellant's room. Det. Frias spoke
Spanish and explained to appellant who they were and that they wanted to question him about
his wife's murder. Appellant said that he wanted to talk with them, so Det. Frias wrote, in
Spanish, on the 15.17 form, "I asked for a lawyer, but also I wanted to speak with the
Arlington police." The officers told appellant that they would record the interview, and as
they prepared their equipment, Det. Frias gave appellant the Miranda (5) warnings orally in
Spanish. The audio equipment malfunctioned at first, so Det. Frias orally warned Pecina
again once the tape started. Appellant also signed a card that listed his Miranda rights in
Spanish. At every point, appellant waived his Miranda rights. While taping the oral
statement, Det. Frias wrote out a written version for appellant, and he signed it. (6)

 The detectives said that appellant never asked to stop the interview and never asked
to speak with counsel. They denied making any promises, and they stated that they believed
appellant's waiver was knowing, intelligent, and voluntary. After their interview, the
detectives took Judge Maddock back to her office, and she began the process to appoint
appellant's trial counsel.

 Appellant testified that, if an attorney had advised him not to speak with police, he
would not have talked with them. The rest of his testimony dealt with whether he was
advised that he could contact the Mexican Consulate.

 The trial judge denied the motion to suppress. He found that appellant was fully
informed of his rights and "indicated that although he did want a lawyer, that he wished to
also talk with detectives from Arlington, meaning that he basically was waiving his rights at
that time." 

B. Appellate History.

 On original submission, the Fort Worth Court of Appeals affirmed appellant's murder
conviction, finding that, when appellant agreed to speak with police in response to the
magistrate's question, he initiated contact with police. (7) Appellant's action waived both the
Fifth Amendment right to interrogation counsel and the Sixth Amendment right to trial
counsel, regardless of which he may have invoked. (8) On discretionary review, we reversed,
holding that, under Michigan v. Jackson, (9) appellant "had invoked his [Sixth Amendment]
rights to counsel when arraigned by the magistrate at the hospital," and appellant's "yes"
reply when the magistrate asked if he still wanted to talk with the police was insufficient to
reinitiate contact and waive his previously invoked Sixth Amendment right. (10) We remanded
the case for the court of appeals to conduct a harm analysis.

 While this case was pending in the court of appeals on remand, the United States
Supreme Court overruled Michigan v. Jackson-the very case that we relied on in holding that
appellant's invocation of his Sixth Amendment right to counsel at the magistration hearing
rendered his subsequent waiver of the right to counsel for the police-initiated interview
invalid-in Montejo v. Louisiana. (11) However, the court of appeals held that, even after
Montejo, appellant's statements should have been suppressed because he invoked his Fifth
Amendment right to an interrogation attorney by asking the magistrate for an appointed
lawyer. (12) We granted review to discuss the distinct Fifth and Sixth Amendment rights to
counsel after Montejo and to apply those differences to custodial interrogation.

II. 


 Over the past four decades, the jurisprudence concerning the Fifth Amendment right
to counsel during police interrogation and the Sixth Amendment right to counsel at all
"critical" stages of criminal proceedings had become intertwined in complex and confusing
ways. It was increasingly difficult for courts to determine which right can be invoked when
and whether invocation of the right to counsel under one amendment invoked the right to
counsel under the other amendment. Finally, in Montejo, the United States Supreme Court
disentangled the two right-to-counsel constitutional provisions and clarified their separate
purposes and applications by overruling Michigan v. Jackson and reaffirming the bright-line
rule of Miranda and Edwards. (13) As Justice Scalia noted in his Montejo conclusion, 

 This case is an exemplar of Justice Jackson's oft quoted warning that this
Court "is forever adding new stories to the temples of constitutional law, and
the temples have a way of collapsing when one story too many is added. We
today remove Michigan v. Jackson's fourth story of prophylaxis. (14)

We examine how the lessons of Montejo apply in this case, one that is factually very similar
to Montejo. (15)

A. The Fifth Amendment Right to Interrogation Counsel. (16)

 The Fifth Amendment prohibits the government from compelling a criminal suspect
to bear witness against himself. (17) In Miranda v. Arizona, (18) the Supreme Court crafted 
safeguards to protect this "privilege against self-incrimination" in the inherently coercive
atmosphere of custodial interrogations. (19) Before questioning a suspect who is in custody,
police must give that person Miranda warnings. Only if the person voluntarily and
intelligently waives his Miranda rights, including the right to have an attorney present during
questioning, may his statement be introduced into evidence against him at trial. (20)

 Under Edwards v. Arizona, (21) once a person invokes his right to have counsel present
during custodial interrogation, a valid waiver of that right cannot be established by merely
showing that the suspect responded to police-initiated interrogation after being advised of
his rights again. (22) The purpose of the Edwards rule is to "prevent police from badgering a
defendant into waiving his previously asserted Miranda rights." (23) That prophylactic rule
protects the suspect-who has made the decision not to speak to law-enforcement officers
without his lawyer and clearly communicated that decision to the police-from further police
badgering. (24) In Montejo, the Supreme Court again praised the "clear and unequivocal
guidelines to the law enforcement profession" that Edwards provides. (25)

 It is the police officer or other law-enforcement agent who administers Miranda
warnings, and he does so immediately before custodial interrogation. (26) Thus, the police must
give the Fifth Amendment Miranda warnings during the process of custodial interrogation
but before questioning actually begins. (27) But, as the Supreme Court noted in McNeil v.
Wisconsin, (28) it has never accepted the notion of an "anticipatory" invocation of Miranda
rights (1) given by someone other than law-enforcement officers or other state agents; or (2)
outside the context of custodial interrogation.

 We have in fact never held that a person can invoke his Miranda rights
anticipatorily, in a context other than "custodial interrogation"-which a
preliminary hearing will not always, or even usually, involve. . . . Most rights
must be asserted when the government seeks to take the action they protect
against. The fact that we have allowed the Miranda right to counsel, once
asserted, to be effective with respect to future custodial interrogation does not
necessarily mean that we will allow it to be asserted initially outside the
context of custodial interrogation, with similar future effect. (29) 


 Thus, in Montejo, the Supreme Court stated that, under its Fifth Amendment
jurisprudence, "a defendant who does not want to speak to the police without counsel present
need only say as much when he is first approached and given the Miranda warnings." (30) And
if he does invoke his Fifth Amendment right to counsel, "not only must the immediate
contact [by police] end, but 'badgering' by later requests is prohibited." (31)

 Once formal adversary proceedings begin, the Sixth Amendment right to counsel 
applies in exactly the same way as the Fifth Amendment right applies to custodial
interrogation. (32) Thus, Miranda warnings serve the arrestee's interests in both the Fifth and
Sixth Amendment rights to counsel during custodial interrogations conducted after a person
has been formally charged. Because the "doctrines ensuring voluntariness of the Fifth
Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment
waiver," (33) both the Fifth and Sixth Amendment rights to interrogation counsel are fully
encompassed by the Fifth Amendment Miranda doctrine.

B. The Sixth Amendment Right to Trial Counsel.

 The Sixth Amendment right to counsel attaches once the "adversary judicial process
has been initiated," and it guarantees "a defendant the right to have counsel present at all
'critical' stages of the criminal proceedings." (34) We refer to this Sixth Amendment right with
the short-hand term "trial counsel." Generally, an Article 15.17 initial appearance and
magistration marks the initiation of adversarial judicial proceedings in Texas and "plainly
signals" the attachment of a defendant's Sixth Amendment right to counsel. (35)

 In Michigan v. Jackson, the Supreme Court had held that "if police initiate
interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his
right to counsel, any waiver of the defendant's right to counsel for that police-initiated
interrogation is invalid." (36) That is the rule that the Supreme Court explicitly overruled in
Montejo because it was deemed "unworkable," "superfluous," and a "policy driven" doctrine
whose "policy is being adequately served through other means." (37)

 Furthermore, the Jackson rule simply did not take account of the practical realities and
goals of the arraignment event and its relationship to the separate event of custodial
interrogation. When a person is brought before a magistrate, told that he is formally accused
of committing a crime, and asked if he wants a lawyer to represent him in those criminal
proceedings, that is an entirely different question from whether he wants a lawyer to be with
him during any police questioning. A defendant's response, "Yes, I want a lawyer," is fatally
ambiguous because it may mean "I want a lawyer for these judicial proceedings," or "I want
a lawyer before I talk to the police," or "I want a lawyer for all purposes and I do not want
to say anything more to anyone-you or the police-until I have one." (38) 

 As Montejo concluded, this ambiguity is easy to resolve: a Sixth Amendment request
for an attorney at an arraignment, initial appearance, or Article 15.17 hearing is a request for
the guiding hand of counsel for all judicial criminal proceedings. If the defendant also
wishes to invoke his Sixth Amendment right to counsel during the "critical stage" of post-arraignment custodial interrogation, (39) he may certainly do so. But he does so by invoking
that right to counsel, pursuant to Miranda, Edwards, and Minnick when law enforcement or
other state agents embark upon custodial interrogation. (40)

 Thus, both the Fifth and Sixth Amendment rights to counsel during custodial
interrogation depend upon the same thing: "What matters for Miranda and Edwards is what
happens when the defendant is approached for interrogation, and (if he consents) what
happens during the interrogation-not what happened at any preliminary hearing." (41)

 Distilled to its essence, Montejo means that a defendant's invocation of his right to
counsel at his Article 15.17 hearing says nothing about his possible invocation of his right
to counsel during later police-initiated custodial interrogation. The magistration hearing is
not an interrogation event. An uncharged suspect may invoke his Fifth Amendment right to
counsel (and a defendant who has been arraigned may invoke his Sixth Amendment right to
counsel) for purposes of custodial interrogation when the police or other law-enforcement
agents approach him and give him his Miranda warnings. That is the time and place to either
invoke or waive the right to counsel for purposes of police questioning.

C. Standard of Review

 In reviewing claims concerning Miranda violations and the admission of statements
made as the result of custodial interrogation, we conduct the bifurcated review articulated
in Guzman v. State. (42) We afford almost total deference to the trial court's rulings on
questions of historical fact and on application of law to fact questions that turn upon
credibility and demeanor while we review de novo the trial court's rulings on application of
law to fact questions that do not turn upon credibility and demeanor. (43) 

 However, the Supreme Court has held that, in deciding whether an accused "actually
invoked his right to counsel," reviewing courts must use an objective standard "[t]o avoid
difficulties of proof and to provide guidance to officers conducting interrogations[.]" (44) The
accused "must unambiguously request counsel" during a custodial interrogation; thus, "he
must articulate his desire to have counsel present sufficiently clearly that a reasonable police
officer in the circumstances would understand the statement to be a request for an attorney." (45) 
We view the totality of circumstances from the viewpoint of the objectively reasonable police
officer conducting custodial interrogation.

 With that general background, we turn to the present case.

III.
 

 In this case, there were two separate events: magistration followed by a custodial
interrogation. (46) Judge Maddock conducted the magistration and gave appellant his Article
15.17 warnings in Spanish. Appellant told her, "I want a lawyer, but I also want to speak
with the Arlington Police." In her opinion, appellant asked for the appointment of a trial
attorney, but he wanted to talk to the police who were standing right outside the hospital
door. She did not believe that appellant invoked his right to counsel for purposes of custodial
interrogation. (47) As a neutral magistrate, acting in her judicial capacity, she concluded that
appellant was willing to talk to the police officers without counsel. (48) The detectives then
entered and gave appellant his Miranda warnings in Spanish three separate times. At no time
did he hesitate, invoke his right to an attorney at that interview, or ask the officers to stop
their questioning. The officers concluded that appellant freely, voluntarily, and intelligently
waived his right to counsel during their questioning. There is nothing in the record that
would contradict their conclusion.

 Under the totality of these circumstances, we agree with the trial judge that an
objective and reasonable police officer, conducting a custodial interrogation, would conclude
that appellant had voluntarily waived both his Fifth and Sixth Amendment rights to counsel
for purposes of the custodial questioning by Detectives Frias and Nutt. Because appellant
was in custody at the time the police questioned him, he had a Fifth Amendment right to
counsel if he wished to invoke it. Because formal adversary proceedings had begun against
appellant and were triggered by Judge Maddock's magistration, he had a Sixth Amendment
right to counsel if he wished to invoke it. He could invoke either or both in precisely the
same manner-by telling the officers, after they gave him the Miranda warnings, that he
wished to have an attorney before speaking to them. He did not do so. He, therefore, waived
both his Fifth and Sixth Amendment rights to counsel during custodial interrogation. (49)

 A majority of the court of appeals, in its opinion, acknowledged the Supreme Court's
decision in Montejo, and stated that "Miranda and Edwards are still the law for suspects in
custody subjected to police interrogation. . . . To protect the Fifth Amendment privilege
against self-incrimination, the police may not initiate custodial interrogation of a suspect who
has previously requested assistance of counsel." Not exactly. Under Montejo, and following
Miranda, Edwards, and Minnick, the correct statement is, "To protect the Fifth Amendment
privilege against self-incrimination, the police may not continue or re-initiate custodial
interrogation of a suspect who has previously requested assistance of counsel after the police
informed him of his right to counsel at the beginning of a custodial interrogation." (50) Judge
Maddock's magistration did not trigger any Fifth Amendment right concerning custodial
interrogation; that was done by the detectives at the beginning of their interrogation.

 Justice Holman, in his dissenting opinion in the court below, correctly noted that "the
'Miranda-Edwards regime' does not apply to 'non interrogative types of interaction between
the defendant and the State.'" (51) He stated that both the Supreme Court decision in Montejo
and our post-Montejo decision in Hughen (52) make it clear that "whatever occurred at
[appellant's] preliminary hearing did not even implicate Edwards because Pecina had not yet
been approached for interrogation nor had he ever unambiguously expressed his desire to
deal with the police only through his attorney." (53) Further, Justice Holman correctly noted,
"now that the Montejo court has overruled Jackson, neither a defendant's request for counsel
at arraignment or similar proceeding nor appointment of counsel by a court gives rise to a
presumption that any subsequent waiver by a defendant to police-initiated interrogation is
invalid." (54) We agree with this analysis.

 Because, under Montejo, appellant never invoked his Fifth or Sixth Amendment rights
to counsel during custodial interrogation, we conclude that the trial judge properly denied
appellant's motion to suppress his statements made as a result of that police questioning. We
therefore reverse the judgment of the court of appeals and affirm the trial court's judgment.

Delivered: January 25, 2012

Publish
1. Tex. Code Crim. Proc. art. 15.17.
2. Pecina v. State, 326 S.W.3d 249, 265-66 (Tex. App.-Fort Worth 2010) ("When Pecina
requested appointment of counsel, which is undisputed, he invoked his Fifth Amendment right to
consult with and have counsel present, as the magistrate explained that right to him, at any police
questioning. The police were waiting in the hall to question him at that moment.").
3. The State's Grounds for Review are as follows:

(1) The Fort Worth Court's opinion improperly conflates Appellant's noninterrogative
arraignment with his subsequent interrogation.

(2) The Fort Worth Court misapplied this Court's opinion in Hughen v. State.

(3) Appellant could not anticipatorily invoke his Fifth Amendment rights at a
noninterrogative arraignment.
4. Judge Maddock read the Spanish version of the rights printed on the English version,
including the following:

(2) You have a right to hire a lawyer and have him/her present prior to and during any
interview and questioning by peace officers or attorneys representing [the] state;

(3) If you cannot afford a lawyer, you have the right to request the appointment of a lawyer to
be present prior to and during any such interview and you have the right to have an
attorney appointed to represent you if you cannot afford an attorney. This means you may
obtain your own lawyer or have a lawyer appointed for you. You may have reasonable
time and opportunity to consult your lawyer if you desire. [The form then describes the
paperwork necessary to obtain indigent status for counsel];

(4) You have the right to remain silent. You do not have to speak to the police;

(5) You are not required to make a statement, and any statement you make can and [may be]
used against you in court;

(6) You have the right to stop any interviewing or questioning at any time. If you decide to
answer questions, you may stop the questioning at any time;

(7) You have the right to have an examining trial if you are charged with a felony offense;
and 

(8) You may be subject to deportation if you are not a U.S. citizen.
5. Miranda v. Arizona, 384 U.S. 436 (1966)
.
6. In his taped statement, appellant said that he did not remember much about the day his
wife died. He said that they had argued about her not wanting to be with him. He became angry,
and they started to fight. Appellant admitted that he had cut his wife and that no one else was
present when these events occurred. He had no memory of cutting himself. In his written
statement, appellant said that he picked up the knife from the kitchen and cut his wife, but he did
not remember how many times he cut her.
7. Pecina v. State, No. 2-05-456-CR, 2007 WL 1299263, *7-8 (Tex. App.--Fort Worth
May 3, 2007) (not designated for publication) (Pecina I). 
8. Id.
9. 475 U.S. 625 (1986).
10. Pecina v. State, 268 S.W.3d 564, 568 (Tex. Crim. App. 2008) ("While we agree with
the court of appeals that Appellant's Sixth Amendment right to counsel attached when he was
arraigned by the magistrate, we disagree that Appellant himself initiated contact with the
police.") (Pecina II).
11. Montejo v. Louisiana, 556 U.S. 778, 129 S.Ct. 2079 (2009).
12. Pecina v. State, 326 S.W.3d 249, 264-67 (Tex. App.--Fort Worth 2010) (Pecina III).
13. Montejo, 556 U.S. at ___, 129 S.Ct. at 2091-92.
14. Montejo, 556 U.S. at __, 129 S.Ct. at 2092 (citation omitted).
15. Jesse Jay Montejo was arrested for murder and questioned by police detectives. He
admitted that he had shot and killed the victim in a botched burglary. Several days later he was
charged with murder and, at a preliminary hearing, the judge ordered that counsel be appointed to
represent him. 129 S.Ct. at 2082. Later that same day, police detectives visited Montejo in jail. 
They read him his Miranda rights and asked him to accompany them to find the murder weapon. 
Montejo agreed, and, during the trip, he wrote "an inculpatory letter of apology to the victim's
widow." Id. Only later did Montejo meet his court-appointed lawyer, "who was quite upset that
the detectives had interrogated his client in his absence." Id. On appeal, Montejo claimed that
the inculpatory letter should not have been admitted because he had invoked his Sixth
Amendment right to counsel at the preliminary hearing and thus police officers were barred from
questioning thereafter without the presence of counsel. Id. at 2083. The Supreme Court held
that neither a defendant's request for counsel at a preliminary hearing nor appointment of that
counsel affects the validity of the defendant's waiver of his Miranda rights during a subsequent
custodial interrogation by police. Id. at 2091-92. But the Court remanded the case to determine
whether Montejo had "made a clear assertion of the right to counsel when the officers had
approached him about accompanying them on the excursion for the murder weapon," because (1)
the question of whether Montejo had validly waived his Miranda rights had not been fully
litigated; and (2) he could still press his claim that his Sixth Amendment rights had been violated
if the police misrepresented whether he had been appointed a lawyer when he purportedly waived
his Miranda rights during that custodial interrogation. Id. 
16. We refer to this right to counsel as the "Fifth Amendment right to interrogation counsel"
to distinguish it from the "Sixth Amendment right to trial counsel." To be clear, this

is something of a misnomer to the extent that it indicates that the Fifth Amendment
itself creates a right to counsel. The rights created by Miranda, including the right to
have counsel present during custodial interrogation, "are not themselves rights protected
by the Constitution but [are] instead measures to insure that the right against
compulsory self-incrimination [is] protected." However, because of the pervasiveness of
the term's use in the cases of the Supreme Court . . . interpreting the right to counsel
created by Miranda, we use it here.

Goodwin v. Johnson, 132 F.3d 162, 179 n.12 (5th Cir. 1997) (quoting Duckworth v. Eagan, 492
U.S. 195, 203 (1974) (all other citations and quotation marks omitted).
17. U.S. Const. amend V ("No person . . . shall be compelled in any criminal case to be a
witness against himself").
18. 384 U.S. 436 (1966).
19. Id. at 441; see also Dickerson v. United States, 530 U.S. 428, 437-38 (2000)
(describing the Fifth Amendment right to interrogation counsel as a prophylactic rule necessary 
to mitigate the inherently coercive environment of custodial interrogation).
20. Miranda, 384 U.S. at 475.
21. 451 U.S. 477 (1981).
22. Id. at 485.
23. Michigan v. Harvey, 494 U.S. 344, 350 (1990).
24. Texas v. Cobb, 532 U.S. 162, 175 (2001) (Kennedy, J., concurring).
25. Montejo, 556 U.S. at __, 129 S.Ct. at 2091 (internal quotation marks omitted).
26. Miranda, 384 U.S. at 444-45 (suspect may invoke his Fifth Amendment right to
interrogation counsel "prior to" interrogation or during interrogation if he indicates "in any
manner, and at any stage of the process that he wishes to consult with an attorney before
speaking"). In Montejo, the Supreme Court repeatedly referred to the Fifth Amendment right to
counsel during "police initiated" custodial interrogation, thus it is that factual
scenario-questioning by police officers or their agents-that gives rise to the prophylactic
Miranda warnings, and the invocation or waiver of the Fifth Amendment right to counsel during
such questioning. See Montejo, 556 U.S. at ___, 129 S.Ct. at 2086 (stating that "antibadgering"
by police officers is the rationale of Edwards), id. at 2087 (rejecting Montejo's proposed rule that
would prevent "police-initiated interrogation entirely once the Sixth Amendment right" to
counsel attaches), id. at 2089 (purpose of Jackson rule, like that of Edwards, "is to preclude the
State from badgering defendants into waiving their previously asserted rights").
27. Id. at 467. As the Miranda Court stated, "An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one,
his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to
counsel during interrogation can be recognized unless specifically made after the warnings we
here delineate have been given." 384 U.S. at 470. Thus, a suspect who, before the police have
begun reading him his Miranda warnings, asks them for an attorney, is entitled to one before
being questioned. Similarly, a suspect who, upon being given his Miranda warnings, asks the
police for an attorney, is entitled to one before being questioned. And a suspect who initially
states that he understands all of his rights and wishes to waive them, but, at any point during the
questioning, stops and asks for an attorney, is entitled to one before being questioned further.
28. 501 U.S. 171 (1991); see also Green v. State, 934 S.W.2d 92, 97 (Tex. Crim. App.
1996) ("Like the hearing in McNeil, appellant's request for an attorney at his appearance
associated with the robbery was not an expression for assistance in dealing with custodial
interrogation by the police."); Flamer v. Delaware, 68 F.3d 710, 725-26 (3d Cir. 1995) (murder
defendant's request for counsel at his arraignment did not constitute a Fifth Amendment request
for counsel at a subsequent police interrogation; "McNeil stands for the proposition that a request
for an attorney at arraignment is, in itself, insufficient to invoke the Fifth Amendment right to
counsel at subsequent custodial interrogation--even if that interrogation concerns the offense on
which the defendant was arraigned."); Alston v. Redmond, 34 F.3d 1237, 1246 (3d Cir. 1994)
("The antipathy expressed in McNeil towards the anticipatory invocation of the Miranda rights is
consistent with Miranda's underlying principles. The Miranda right to counsel is a prophylactic
rule that does not operate independent from the danger it seeks to protect against--'the
compelling atmosphere inherent in the process of in-custody interrogation'--and the effect that
danger can have on a suspect's privilege to avoid compelled self-incrimination.").
29. 501 U.S. at 182 n.3.
30. Montejo, 556 U.S. at __, 129 S.Ct. at 2090 (citing "the Miranda- Edwards-Minnick line
of cases").
31. Id.
32. Id. (noting that cases like Jackson "protect the right to have counsel during custodial
interrogation-which right happens to be guaranteed (once the adversary judicial process has
begun) by two sources of law. Since the right under both sources is waived using the same
procedure, doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously
ensure the voluntariness of the Sixth Amendment waiver") (citations omitted).
33. Id. at 2090.
34. Montejo, 556 U.S. at __, 129 S.Ct. at 2085. An accused may invoke his Sixth
Amendment right "at or after the initiation of adversary judicial criminal proceedings - whether
by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v.
Illinois, 406 U.S. 682, 689 (1972). This is the "starting point" for the Sixth Amendment right to
trial counsel because "it is only [when adversary proceedings commence] that the government
has committed itself to prosecute, and only then that the adverse positions of government and
defendant have solidified." Id. 
35. Rothgery v. Gillespie County, 554 U.S. 191, 212 (2008) (stating that Texas's article
15.17 magistration hearing "plainly signals" the attachment of the Sixth Amendment right to
counsel, "even if it is not itself a critical stage."); see also Hughen v. State, 297 S.W.3d 330, 335
(Tex. Crim. App. 2009) (defendant's "Article 15.17 initial appearance marked the initiation of
adversarial judicial proceedings against him and thus 'plainly signal[ed] attachment' of his Sixth
Amendment right to counsel.").
36. Michigan v. Jackson, 475 U.S. 625, 636 (1986).
37. Montejo, 556 U.S. at __, 129 S.Ct. at 2089-91 (concluding that, "when the marginal
benefits of the Jackson rule are weighed against its substantial costs to the truth-seeking process
and the criminal justice system, we readily conclude that the rule does not 'pay its way.'").
38. See Montejo, 556 U.S. at __, 129 S.Ct. at 2086 (noting that even the Jackson Court
acknowledged "doubt that defendants 'actually intend[ed] their request for counsel to encompass
representation during any further questioning'").
39. See Montejo, 556 U.S. at ___, 129 S.Ct. at 2085 (citing Massiah v. United States, 377
U.S. 201, 204-05 (1967)).
40. Montejo, 556 U.S. at ___, 129 S.Ct. at 2089-90 (stating that, even without Jackson,
"any suspect subject to custodial interrogation has the right to have a lawyer present if he so
requests, and to be advised of that right. . . . These three layers of prophylaxis are sufficient. 
Under the Miranda-Edwards-Minnick line of cases (which is not in doubt), a defendant who does
not want to speak to the police without counsel present need only say as much when he is first
approached and given the Miranda warnings. . . . If that regime suffices to protect the integrity of
a 'suspect's voluntary choice not to speak outside his lawyer's presence' before his arraignment,
it is hard to see why it would not also suffice to protect that same choice after arraignment, when
Sixth Amendment rights have attached.") (citation omitted).
41. Id. at 2091.
42. 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); see Leza v. State, 351 S.W.3d 344, 349
(Tex. Crim. App. 2011) ("[W]e measure the propriety of the trial court's ruling with respect to
alleged Miranda violations under the totality of the circumstances, almost wholly deferring to the
trial court on questions of historical fact and credibility, but reviewing de novo all questions of
law and mixed questions of law and fact that do not turn on credibility determinations.");
Ripkowski v. State, 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001).
43. Leza, 351 S.W.3d at 349.
44. Davis v. United States, 512 U.S. 452, 458-59 (1994).
45. Id. at 459.
46. The court of appeals mistakenly concluded that, during the magistration, appellant was
"approached for interrogation." Pecina III, 326 S.W.3d at 267 ("The detectives-acting through
the magistrate-initiated interrogation by asking Pecina if he still wanted to talk to them."). These
are entirely distinct events, and the officers were not even in the hospital room when Judge
Maddock performed her magistration duties, nor could it be said that, as a judge, she was
somehow a conduit for custodial interrogation by the detectives.
47. Indeed, such a request would be entirely inconsistent with the words that appellant
actually used. See, e.g., McNeil v. Wisconsin, 501 U.S. 171, 178-79 (1991) ("[T]o find that [the
accused] invoked his Fifth Amendment right to counsel on the present charges merely by
requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard
the ordinary meaning of that request.") (internal quotations marks omitted).
48. The article 15.17 hearing assures suspects that judges, not police, are in charge of the
justice system in America. As Professors Dix and Schmolensky have noted,


 A primary function of the appearance before the magistrate, of course, is the
provision of the interrogation warnings, but by a person with less interest in
having waivers than interrogating officers. In addition, presentation demonstrates
to suspects that the law enforcement agency holding them acknowledges outside
limits upon its power over suspects. Both impartial warnings and the
demonstration of judicial dominance may reduce the inherently coercive impact of
later custodial interrogation upon suspects.




41 G. Dix & J. Schmolensky, Texas Practice Series: Criminal Practice and Procedure
§20:5 (3d ed. 2011).
49. Appellant aptly notes, "Once counsel is invoked, whether it is called 5th Amendment
invocation or a 6th Amendment invocation is a distinction without a lot of difference." 
Appellant's Brief at 6. He is correct in the context of post-arraignment custodial interrogation, as
a defendant has both a Fifth and Sixth Amendment right to counsel during that interrogation and
either (or both) is triggered by the police giving him the Miranda warnings.
50. See Montejo, 556 U.S. at __, 129 S.Ct. at 2090 ("[A] defendant [i.e. one who has been
formally charged with a crime] who does not want to speak to the police without counsel present
need only say as much when he is first approached and given the Miranda warnings."). 
51. Pecina III, 326 S.W.3d at 271 (Holman, J., dissenting).
52. In Hughen, the defendant was taken to a magistrate who read him his rights under
article 15.17. 297 S.W.3d at 331-32. The defendant requested appointment of counsel. Id. 
Three hours later, a detective initiated custodial interrogation by reading the defendant his
Miranda rights, and the defendant waived those rights and agreed to talk to the officer without
counsel. Id. at 332. We held that the Fifth Amendment Miranda waiver was sufficient to waive
his Sixth Amendment right to counsel during that interview. Id. at 335. Hughen specifically
dealt only with a waiver under the Sixth Amendment because that was his specific claim. Under
Montejo, the result is exactly the same under either a Fifth or Sixth Amendment claim.
53. Pecina III, 326 S.W.3d at 271 (Holman, J., dissenting).
54. Id. at 272.